**Betty Jo Allen FINNEY,
Plaintiff-Appellee,**

v.

**James Paul FINNEY,
Defendant-Appellant.**

Court of Appeals of Tennessee,
Middle Section.

April 15, 1981.

Certiorari Denied by Supreme Court
June 29, 1981.

Howard F. Butler, H. Philip Sadler, Nashville, for plaintiff-appellee.

David E. Brandon, Robert E. Kolarich, Nashville, for defendant-appellant.

## OPINION

LEWIS, Judge.

Plaintiff and defendant were married in Davidson County, Tennessee, on March 21, 1978. They immediately moved to Houston,

Texas, and made their home there throughout their marriage. Their only child was born in Houston on February 6, 1979.

On September 3, 1979, plaintiff and the parties' minor child came to Nashville because plaintiff's grandmother "was dying and I [plaintiff] came up to visit her before she died." Plaintiff and defendant discussed plaintiff's coming to Nashville before she left, and defendant provided the funds for plaintiff's trip. About September 22, 1979, defendant, with others of his family, came to Nashville to get plaintiff and the child, who were staying with her parents in Nashville. (The parties dispute defendant's intent to return to Texas with his wife.) There was an altercation at plaintiff's parents' home and defendant left, returning to Texas without plaintiff or the child.

Thereafter, on October 2, 1979, plaintiff filed suit for an absolute divorce and custody of the minor child in the Circuit Court for Davidson County, Tennessee. On October 5, 1979, defendant filed his suit in the District Court of Harris County, Texas, seeking an absolute divorce and custody of the minor child. On November 6, 1979, the District Court of Harris County awarded temporary custody of the minor child to defendant. This temporary custody order was suspended by the Circuit Court for Davidson County, Tennessee, on November 15, 1979. On February 1, 1980, defendant was awarded a divorce and custody of the minor child by the District Court for Harris County, Texas. Plaintiff was awarded a divorce and custody of the minor child in the Circuit Court for Davidson County, Tennessee, on May 13, 1980.

Several issues are raised in this appeal but the determinative one is the failure of the Circuit Court for Davidson County, Tennessee, to accord the Texas decree full faith and credit.

The Trial Judge determined that the Texas decree was not entitled to full faith and credit because the

> action of the Texas Court was not valid, that it violated due process for lack of notice to the defendant [Mrs. Finney, the plaintiff herein], a hearing having taken place without notice after assurance from that Court [Texas Court] to this Court [Tennessee Court] and to the defendant in that case that no hearing would take place. Then they promptly went ahead and had a hearing and apparently had a hearing—I don't know whether they had a hearing or not but they did enter an order.

Mrs. Finney, plaintiff here and defendant in the Texas proceeding, was served with process from the Texas Court but failed to respond in the Texas proceedings. In *Williams v. North Carolina*, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942), North Carolina was required to give full faith and credit to a Nevada divorce decree, even though the defendant North Carolina citizen had not appeared at the proceedings. North Carolina was permitted to re-examine the Nevada court's determination that plaintiff in the Nevada proceedings had domicile in Nevada as a jurisdictional fact. *Williams v. North Carolina*, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945). In the case at bar there has been no challenge to the husband's Texas domicile.

There is an exception to the *Williams* rule if the form and nature of the constructive service fails to meet the requirements of due process.

> [I]t is plain that each state, by virtue of its command over its domiciliaries and its large interest in the institution of marriage can alter within its own borders the marriage status of the spouse domiciled there, even though the other spouse is absent. There is no constitutional barrier if the form and nature of the substituted service ... meet the requirements of due process.

317 U.S. at 298–99, 63 S.Ct. at 213, 87 L.Ed. at 286. Here the only failure to comply with due process that appears to be suggested is the Texas Court's failure to advise the Tennessee Trial Judge as to the status of its docket. The failure of the clerk of the Texas District Court to notify the Judge of the Circuit Court for Davidson County that the case would be heard is not a failure to comply with due process.

In general, as to matters involving custody of minor children, where one state has in personam jurisdiction of a child *through* residence or presence, the legal technicalities of where it is domiciled are not regarded as determinative. *May v. Anderson*, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953); *Halvey v. Halvey*, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947). "The child's welfare in a custody case has such a claim upon the state that its responsibility is obviously not to be foreclosed by a prior adjudication reflecting another state's discharge of its responsibility at another time." *May v. Anderson*, 345 U.S. at 536, 73 S.Ct. at 844–45, 97 L.Ed. at 1228 (Frankfurter, J., concurring). See, also, *Restatement (2nd) Conflict of Laws* § 79, Comment (a): "The state in which the child is physically present must have the power to take the necessary steps for his protection . . . ."

The philosophy of *May v. Anderson* and the *Restatement of Conflicts* has been under attack in recent years, and it is among the aims of the Uniform Child Custody Jurisdiction Act to give greater stature and stability to custody decrees. The aim of the Act is to avoid parental kidnapping and other types of retaliatory conduct which often occur in this area. *See* Bodenheimer, *The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught In The Conflict of Laws*, 22 Vand.L.

Rev. 1207 (1969). While the ULA Commissioners have not listed Tennessee among those states which have adopted the Uniform Act, Tennessee's Child Custody Act, T.C.A. §§ 36–1301 through 36–1325, is substantially similar.

Prior to the passage by the Tennessee General Assembly of the Child Custody Act of 1979, our Supreme Court on more than one occasion has stated that custody decrees of another state were binding on the courts of this state, but where the child had been removed to Tennessee, where there had been a change of circumstances, and where it was shown to be in the best interest of the child, Tennessee courts would take jurisdiction. *Sutton v. Sutton*, 220 Tenn. 410, 417 S.W.2d 786 (1967); *Kenner v. Kenner*, 139 Tenn. 211, 201 S.W. 779 (1917).

While the Tennessee Child Custody Act, as we have heretofore stated, is substantially similar to the Uniform Act, our legislature did not see fit to include language from the model act permitting jurisdiction when "it is in the best interest of the child that a court of this State assume jurisdiction because . . . the child and his parents, or the child and at least one contestant, have a significant connection with this State. . . ." *Uniform Child Custody Jurisdiction Act* (U.L.A.) § 3(a)(2)(i).

T.C.A. § 36–1303[1] is the jurisdictional section of the Tennessee Child Custody Act

---

1. 36–1303. Jurisdiction to make custody determination.—(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) This state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of the child's removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

(2)(A) It appears that no state has jurisdiction under subsection (a), or each state with jurisdiction under subsection (a) has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child; and

(B) The child and at least one contestant have a significant connection with this state; and

(C) There is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships; and

(D) It is in the best interest of the child that a court of this state assume jurisdiction; or

(3) It appears that no state has jurisdiction under subsections (a) or (b) or each such state has refused jurisdiction on the ground that this is the more appropriate forum to determine child custody, and it is in the best interest of the child that a court of this state assume jurisdiction.

(b) Except under subsection (c) of this section, physical presence in this state of the child, or of the child and one (1) of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

(c) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his or her custody.

and, unlike the model Act, the best interest of the child is not a jurisdictional factor pursuant to T.C.A. § 36–1303.

While the child was physically present in Tennessee when the instant suit was filed, the proof is clear that Tennessee was not the child's "home state"[2] when suit was filed. Plaintiff and defendant were married in Tennessee but immediately moved to Texas where they resided throughout the entire course of their marriage. The child was born and resided in Texas with its parents. When plaintiff came to Nashville with the child in September, 1979, it was only for a visit. She at all times intended to return to Texas. On September 22, 1979, defendant, along with his mother, sister, and brother-in-law, came to Nashville from Texas to get plaintiff and the child, and it was plaintiff's intent at that time to return to Texas with defendant and the minor child. Plaintiff testified that the reason she did not return to Texas with her husband was an altercation which occurred when her sister-in-law came into plaintiff's bedroom where plaintiff was packing to return to Texas with her husband. She testified that the minor child was asleep and that the sister-in-law bent over the playpen to get the child and that when she did so, plaintiff shoved her back, then everybody in the house wound up in the bedroom and "at that point everybody lost control of everything." This occurred on September 22. Five days later, on September 27, plaintiff signed her complaint for divorce and custody of the minor child and the complaint was filed on October 2, 1979.

The Tennessee Child Custody Act contemplates that Tennessee courts will have jurisdiction: where Tennessee is the home state; where no other state has jurisdiction as home state, and there are significant connections in Tennessee; where other courts have deferred to Tennessee as the preferable forum. The Act does not contemplate that Tennessee courts would defer to another state where there were no significant connections in that state.

■ The Act does not contemplate that jurisdiction may exist concurrently in a "home state" and a state with significant connections. If another state has satisfied the definition of "home state" set out at T.C.A. § 36–1302(5), that state may assert jurisdiction to the exclusion of Tennessee even if Tennessee has significant connections and it is in the child's best interest that Tennessee courts assert such jurisdiction.

In the case at bar, Texas was the "home state" of the minor child at the commencement of the proceedings and Texas had exercised jurisdiction by awarding custody of the child to the defendant herein.

■ The effect of the Tennessee Child Custody Act is to severely limit the ability of Tennessee courts to make custody dispositions of minor children unless the court has jurisdiction pursuant to T.C.A. § 36–1303. The Circuit Court for Davidson County did not have jurisdiction to make a custody disposition.

■ However, even if we assume that the Circuit Court for Davidson County had jurisdiction, there is insufficient evidence in the record to support a determination that awarding custody to plaintiff was in the child's best interest. The Trial Judge based his custody award, at least in part, on the fact that "all of the studies that I have seen indicate that for a child this young, . . . can be very harmful . . . for the custody to be changed [for] the psychological parent not to continue to have the child . . . ." We have searched this record and our search fails to disclose any such psychological data

(d) Jurisdiction shall not be exercised to modify an existing custody decree except in accordance with § 36–1315.

2. T.C.A. § 1302(5). "Home state" means the state in which the child immediately preceding the time involved lived with his or her parents, a parent, or a person acting as parent, for at least six (6) consecutive months, and in the case of a child less than six (6) months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six (6) months or other period.

or studies. Psychological data or studies referred to by the Trial Judge are not such facts as may be judicially noticed. *Milstead v. Kaylor*, 186 Tenn. 642, 212 S.W.2d 610 (1948). The Trial Court's judgment must be based on evidence in the record or on matters of which judicial notice can be taken. *Bush v. Cathey*, 598 S.W.2d 777 (Tenn. App.1979).

The judgment of the Trial Court in failing to give full faith and credit to the Texas decree and in awarding an absolute divorce and custody of the minor child to plaintiff is reversed and plaintiff's suit dismissed with costs to plaintiff. The cause is remanded to the Trial Court for collection of costs and any other necessary proceedings.

TODD, P. J., and CANTRELL, J., concur.