OPINION OF THE COURT
Bruce M. Kaplan, J.
This proceeding brought by petitioner Leslie L. F. against respondent Constance F. pursuant to article 5-A (§ 75-a et seq.) of the Domestic Relations Law, the Uniform Child Custody Jurisdiction Act (UCCJA), poses the questions of whether New York must recognize the California decree granting custody of Scott F. to respondent, and if it must accord recognition, whether New York is empowered to modify that decree.
While this proceeding is brought under the UCCJA, recourse must first be had to the recently enacted Parental Kidnapping Prevention Act (94 US Stat 3568). This measure signed into law December 28, 1980, articulates a Federal policy of pre-emption in this area, and under the *87 supremacy clause of the United States Constitution must be accorded priority.
Since the Federal statute is one of recent enactment, the matter is one of apparent first impression at the time it was decided.
The poignancy and pathos attendant upon custody proceedings emanate from the intensity of feelings that they engender in the participants. Though most cases can be subsumed under one of several frequently occurring fact patterns, given the extraordinary personal responses of the people involved, they are perceived as having little in common with each other. The present case is no exception to that adage.
The parties were married in New York City on January 9, 1965, and two children were born to this union. Apparently problems beset the marriage, and respondent precipitately and with no prior notification spirited the two children to California in mid-January, 1970.
On October 27, 1970, respondent obtained a summons from the Superior Court of California, which was served on petitioner in New York on March 12,1971 by certified mail — return receipt requested. An interlocutory judgment of dissolution of marriage was entered on default on November 29, 1971, and a final judgment of dissolution of marriage was entered on February 23, 1972. These judgments awarded custody of Scott and his sister Leslie to respondent.
In May or June of 1978, Scott and Leslie came to visit petitioner for the summer. At the end of the summer Leslie returned to California while Scott remained with petitioner in New York where he enrolled in school and became involved in community activities which included the New York Boys Club.
On June 8, 1979 after Scott had resided with petitioner for approximately one year, petitioner commenced this proceeding. It appears that a Judge’s certificate requesting assistance from a court of a sister State was partially prepared on June 8, 1979 but not transmitted. On February 4, 1980, this Judge wrote to the Superior Court of California for the County of Los Angeles informing it of the *88 pendency of the instant proceeding. No response regarding respondent was received from the Superior Court. However two communications were received in response to inquiries made by the Probation Department pursuant to the court’s direction of August 22, 1980.
The first letter dated October 10, 1979 indicated that respondent had moved from her S. Westmoreland Avenue address without leaving a forwarding address, one month’s rent unpaid, and a poor reputation.
A letter of January 30,1980 related that respondent had been found at a new address, but she failed to respond to four written requests to contact a Los Angeles County probation officer about this matter.
THE IMPACT OF THE PARENTAL KIDNAPPING PREVENTION ACT (PKPA)
This proceeding is at its threshold governed by the sweeping charges wrought by the PKPA which enunciates an avowed purpose “to establish national standards under which the courts *** will determine their jurisdiction to decide such [custody] disputes and the effect to be given by each such jurisdiction to such decisions by the courts of other such jurisdictions.” (94 US Stat 3569.)
It goes on to require that full faith and credit be given to child custody determinations when made by a court of another State consistently with the provisions of section 1738 of title 28 of the United States Code. Modification of such decrees is permitted only in compliance with subdivision (i) of section 1738A of title 28 of the United States Code.
Since the PKPA establishes a policy of Federal preemption in this area, we must first examine whether the California decree was made consistently with the provisions of the PKPA, and if this is the case, whether New York can meet the requirements of subdivision (f) of section 1738A in order to modify it.[1]
*89 The PKPA is closely related to the UCCJA and even though it differs from it in a number of significant areas, a discussion of jurisdiction under the former will necessarily be relevant to jurisdiction under the latter.
Under the PKPA California had jurisdiction to make its initial custody determination since respondent and the children had resided there for more than six months prior to the commencement of the proceeding. This fact satisfied both California’s jurisdictional requirements, which are contained in its enactment of the UCCJA, and those of section 1738A (subd [c], par [2], cl [A]) of title 28 of the United States Code because it was the child’s home State on the date the proceeding was commenced.
Modification by New York is permissible in the circumstances of this case only if New York has jurisdiction to make a custody determination and California no longer has jurisdiction. (US Code, tit 28, § 1738A, subd [f].) Interestingly enough, the criterion for jurisdiction is contained in subdivision (d) of section 1738A of title 28 of the United States Code, which states: “(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.”
Therefore, if under California law, California would have jurisdiction, the instant petition would have to be dismissed.
After analysis of California law, this court concludes that California would not have jurisdiction since no jurisdictional predicate exists under the UCCJA as adopted by California. The fact that respondent still lives there does *90 not, standing alone, establish jurisdiction even though Professor Bodenheimer would have argued otherwise.[2]
In addition, it may be argued that the failure of the Superior Court of California to respond to this court’s letter of February 4, 1980 was tantamount to declining jurisdiction.
A number of cases have arisen in California where the issue in controversy was whether California should stay its own proceedings to permit completion or institution of custody modification proceedings in a sister State which has a significant connection with one of the contestants and the child. The cases have arisen both where California has made the initial custody determination, and where a sister State has made it.
In Clark v Superior Ct. of Mendocino County (73 Cal App 3d 298), the Court of Appeals found that the Superior Court had abused its discretion when it refused to stay a suit brought to modify the original California decree where the child and one parent had lived in Oregon for a five-year period preceding the suit’s commencement.
The court spoke in terms of possible concurrent jurisdiction, and found Oregon to be a more convenient forum. However, a close reading of the decision reveals that the court was reluctant to divest itself of jurisdiction even though the facts as it found them failed to reveal any basis for presently asserting it.
The Clark court expressed two reservations: (1) the original California decree did not involve any exercise of the California court’s discretion, but was merely a ratification of the parties’ agreement; and (2) a lack of substantial evidence in California. It noted that both States had jurisdiction to make a modification decree.
In Bosse v Superior Ct. of Santa Clara County (89 Cal App 3d 440), the Court of Appeals reversed a determination of the Superior Court to retain jurisdiction over a suit to modify a California custody determination where the child and one of the parties had resided in Montana for two and one-half years at the time the decision was rendered.
*91 In response to the petitioner’s argument that the respondent had forfeited the right to the court’s protection by her systematic frustration of petitioner’s visitation rights the court stated that the UCCJA clearly subordinated the clean hand’s doctrine to the best interests of the child.[3]
Allison v Superior Ct. of Los Angeles County (99 Cal App 3d 993) which held that California should retain jurisdiction even though the children had resided in Texas for 18 months is not apposite to the situation since Texas had not adopted the UCCJA.
In addition, the parties had been married and divorced and the divorce decree modified in California and the children had been born there and had lived there all their lives until moving to Texas.
In Palm v Superior Ct. of San Diego County (97 Cal App 3d 456), a mandamus issued prohibiting the respondent mother from proceeding with a suit to establish a North Dakota decree which gave her custody of the child while a petition for change of custody brought by petitioner father was pending in North Dakota.
A vigorous dissent urged affirmation of the nisi prius decision which found that not only was California the home State based on several years residence there, but that substantial evidence founded on firsthand knowledge was available there. The reasoning set forth in a weaker fact pattern should control the instant one.
The majority opinion vindicates continuing jurisdiction but this result is anomalous since the mother sought to establish a North Dakota decree in a California proceeding. This approach makes far less sense than seeking to vindicate it in North Dakota, the forum where it was made.
In addition, the majority were obviously influenced by the fact that the parties had already litigated the question of custody in North Dakota three times, the mother had retained custody by perpetuating a fraud on the North Dakota court, and had brought a proceeding similar to the *92 instant one which was dismissed just two months prior to her bringing this action.
These decisions explicitly posit and explicitly articulate the salient postulate of the UCCJA that custody determinations should be made in the forum which possesses greatest access to the relevant evidence.
The only instance where California has seemingly disregarded that precept was in Palm (supra) where the parties had embroiled themselves in another forum on an ongoing basis. They have also placed substantial emphasis on the parties’ connection with California, and whether the initial custody determination emanated from a fully contested proceeding, or a ratification of the contestant’s agreement. Neither of these circumstances occurred in this case where respondent, newly arrived in California, obtained an ex parte decree on default after petitioner had been served by mail in New York.
Since New York is Scott’s home State and California lacks present jurisdiction over the matter, New York can properly exercise modification jurisdiction.
UNDER THE UCCJA NEW YORK SHOULD RECOGNIZE, AND MAY MODIFY THE CALIFORNIA DECREE
The inquiry next turns to whether the UCCJA requires New York to recognize the California divorce decree, and if that decree is entitled to recognition whether New York has jurisdiction to modify it.
When New York adopted the UCCJA it essentially codified the approach heretofore taken by the courts of this State. (Matter of Nehra v Uhlar, 43 NY2d 242.)
The UCCJA also represents a considered effort to give stability to child custody decrees and minimize jurisdictional competition between sister States all to the end of resolving custody disputes in the best interests of the child. (Vanneck v Vanneck, 49 NY2d 602, 608.)
One salutary purpose of the UCCJA is to obviate the opprobrious and all too common practice of removal of children from one jurisdiction in order to frustrate existing *93 decrees, and to seek more favorable results in another forum.[4]
This practice was viable because custody decrees were not entitled to full faith and credit, and the mere presence of a child in a State was sufficient to confer jurisdiction (Matter of Bachman v Mejias, 1 NY2d 575).
The enactment of the UCCJA has in large measure circumscribed the frequency of custodial forum shopping. It has not entirely eliminated it since the best interests of the child will often dictate that a modification hearing occur in a State other than the one that made the initial decree.
I conclude that the California decree is entitled to recognition and that New York has jurisdiction to modify it.
An out-of-State decree is entitled to recognition and enforcement when made under statutory provisions substantially in accordance with article 5-A of the Domestic Relations Law, or under factual circumstances meeting its jurisdictional standards. (Domestic Relations Law, § 75-n.)
While California has adopted the UCCJA it did not do so until 1973, and the UCCJA did not become effective there until 1974. (Cal Civ Code Ann, §§ 5150-5174.)
It is not significant that the UCCJA was promulgated by California after respondent obtained her ex parte divorce because the UCCJA as adopted by California and section 75-f of the Domestic Relations Law are not substantially similar.
Section 75-f of the Domestic Relations Law provides:
“1. If a person cannot be personally served with notice within the state, the court shall require that such person be served in a manner reasonably calculated to give actual notice, as follows:
“(a) by personal delivery outside the state in the manner prescribed in section three hundred thirteen of the civil practice law and rules;
*94 “(b) by any form of mail addressed to the person and requesting a receipt; or
“(c) in such manner as the court, upon motion, directs, including publication, if service is impracticable under paragraph (a) or (b) of subdivision one of this section.”
The official text adopted by California states in part:
“§ 5154. Notice to persons outside this State; submission to jurisdiction
“(1) Notice required for the exercise of jurisdiction over a person outside this state shall be given in a manner reasonably calculated to give actual notice, and may be”.
The California statute begs the question that a respondent is outside the State and gives petitioner the discretion to utilize one of three alternative methods of service without further direction from the court.
Section 75-f of the Domestic Relations Law differs in that it mandates that the court be informed that a person cannot be served within the State, so that the court can require the manner in which the person shall be served. In New York it is the court and not the petitioner that decides what manner of service shall obtain if respondent cannot be personally served within the State.
The emphasis on the difference between the New York and California statutes is no mere quibble. The Commissioners’ Note found at section 4 of the UCCJA (9 Uniform Laws Ann [1979 ed], p 130) observe that notice and an opportunity to be heard are necessary to satisfy due process requirements, and that strict compliance with sections 4 and 5 of the UCCJA is necessary for the validity of a custody decree within the State and its enforcement and recognition in other States.
Since California did not obtain jurisdiction under a substantially similar statute, New York’s obligation to recognize it does not rest on this ground.
New York must accord recognition to the California decree on the basis that California assumed jurisdiction under factual circumstances meeting the jurisdictional standards of the UCCJA (Domestic Relations Law, § 75-n).
*95 While this court looks askance at the cavalier method by which respondent effected service by mail there is no question that petitioner had actual notice of the pendency of the California action on March 12, 1971, and that a default was not taken until November 29,1971, over eight months after the summons and petition were served.
The UCCJA as adopted by California provided only for 10 days’ notice while New York requires 20 days’ notice (Domestic Relations Law, § 75-f). If the default judgment had been granted less than 20 days after notice was given it would not have been entitled to recognition. (Matter of Fernandez v Rodriquez, 97 Misc 2d 353.) However, it was not obtained until a time longer than 20 days after the summons was served.
Since California assumed jurisdiction under factual circumstances meeting New York standards, its decree is entitled to recognition.
Although New York must recognize California’s decree, New York possesses the authority to modify it.
The conditions under which New York can modify a custody decree of a sister State are set forth in section 75-o of the Domestic Relations Law. This section states:
“1. If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (1) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this article or has declined to assume jurisdiction to modify the decree and (2) the court of this state has jurisdiction.
“2. If a court of this state is authorized under subdivision one of this section and section seventy-five-i of this article to modify a custody decree of another state, it shall give due consideration to the transcript of the record and order documents of all previous proceedings submitted to it in accordance with section seventy-five-v of this article.”
The first condition is that it appear to a court of this State that the decree-granting State no longer has jurisdiction and that a New York court now has jurisdiction.
*96 It should be emphasized that it is a New York court, and not a California court that is empowered to determine whether California presently possesses jurisdiction.
That determination is made by reference to section 75-d of the Domestic Relations Law which provides:
“1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree only when:
“(a) this state (i) is the home state of the child at the time of commencement of the custody proceeding, or (ii) had been the child’s home state within six months before commencement of such proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as a parent continues to live in this state; or
“(b) it is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is within the jurisdiction of the court substantial evidence concerning the child’s present or future care, protection, training, and personal relationships; or
“(c) the child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child; or
“(d) (i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (a), (b), or (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.”
It is evident that California could not exercise jurisdiction under paragraph (a) of subdivision 1 since California was not Scott’s home State, as that term is defined in subdivision 5 of section 75-c of the Domestic Relations Law, nor was California his home State within six months before the commencement of the proceeding. It is further *97 evident that neither paragraph (c) nor paragraph (d) of subdivision 1 of section 75-d of the Domestic Relations Law is applicable to California, leaving paragraph (b) as the only possible predicate for the exercise of jurisdiction by California.
While California arguably meets the significant connection test of clause (i) of paragraph (b) it cannot meet the substantial evidence test contained in clause (ii) of paragraph (b), and unless both subparagraphs are met, jurisdiction will not lie.
The courts of New York have had occasion to determine whether there exists within another forum substantial evidence concerning a child’s present and future care, protection, training, and personal relationships.
In Matter of Potter v Potter (104 Misc 2d 930) the Honorable Isidore Levine thoughtfully considered the question of what constitutes, inter alia, substantial evidence concerning the child’s present or future care, protection, training and personal relationships in order to determine whether New York had jurisdiction under section 75-d (subd 1, par [b]). He found substantial evidence available because David Potter, at the time of the decision, had lived in New York for nine months, was enrolled in a local school and was a member of a local church. He went on to say (supra, p 936): “The evidence available in New York is significant, because it is the most recent evidence on David’s life and it concerns the handling of his problems, educational and emotional. Evidence of petitioner’s parental fitness and his relationship with David are present in this jurisdiction. The child’s presence provides this jurisdiction with evidence of his personal relationships, as testimony may be had of his preference. His school records are here, as well as his teacher who could evaluate his progress with the educational difficulties which prompted his move to New York. Also available here is evidence of David’s condition as ascertained by the counselor currently treating him. This evidence is all relevant to David’s present and future welfare. The court finds the evidence available in this jurisdiction to be substantial.”
The meaning of substantial evidence is thoroughly considered in the Commissioners’ Note at section 3 of the UCCJA (9 Uniform Laws Ann [1979 ed], p 123).
*98 It views paragraph (b) as an alternative to the home State test and stresses that its purpose was to circumscribe, not expand jurisdiction. (Vanneck v Vanneck, 49 NY2d 602, supra.) It goes on to emphasize the primacy of the child’s best interests, and states that jurisdiction exists only if it is in the child’s interest to determine custody in a particular State. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family.
While the note fails to discuss the criteria for ascertaining whether substantial evidence concerning present and future care, protection, etc., exists within a particular forum, some further guidance may be gleaned from earlier in the commissioners’ notes where it explains the utilization of the six-month period as follows:
“A 6-month period has been selected in order to have a definite and certain test which is at the same time based on a reasonable assumption of fact. See Ratner, Child Custody in a Federal System, 62 Mich.L.Rev. 795, 818 (1964) who explains:
“ ‘Most American children are integrated into an American community after living there six months; consequently this period of residence would seem to provide a reasonable criterion for identifying the established home.’” (Commissioners’ Note, UCCJA, §3, 9 Uniform Laws Ann [1979 ed], p 123.)
When this empirical wisdom is meshed with the act’s avowed objective of assuring that custody determinations (including modification) are made in the forum possessing optimum access to relevant evidence about the child and family, one ineluctable conclusion follows. It is in Scott’s best interest that New York assume jurisdiction over this matter. Not only had he lived openly and accessibly in New York for one year when the petition was brought but he had also lived here for two years at the time the matter was fully submitted for disposition.
During this time which encompasses 20% of his life he has re-established substantial roots, friendships, frames of references and loci of interests in the State of his birth.
If he were to be uprooted from them it could only be at a high emotional cost.
*99 NEW YORK SHOULD NOT DECLINE JURISDICTION AS AN INCONVENIENT FORUM
While the doctrines of forum non conveniens, as embodied in section 75-h of the Domestic Relations Law and wrongful conduct as embodied in section 75-i of the Domestic Relations Law might be cited as a bar to the assumption of jurisdiction, neither section compels that result within the factual context of the instant proceeding.
Section 75-h of the Domestic Relations Law is viewed as a second check on jurisdiction, once the tests of sections 75-c and 75-o of the Domestic Relations Law have been met.
It stresses interstate judicial communication and cooperation aimed at determining the more appropriate forum. While traditional considerations relating to convenience of the forum are included in the section, they are of secondary importance because the child, who is not a party, is the central figure in the proceeding. (Commissioners’ Note, UCCJA, § 7, 9 Uniform Laws Ann [1979 ed], p 139.)
Once this court determined that it possessed jurisdiction it wrote to the Superior Court of California in an effort to fulfill the laudible purposes of judicial co-operation aimed at avoiding jurisdictional disputes. Since no reply was received, this court concluded that no such problem permeated this case.
An examination of the provisions of section 75-h of the Domestic Relations Law reveals that paragraphs (b) and (c) of subdivision 3 closely resemble section 75-d (subd 1, par [b], els [i], [ii]) so that the conclusions reached in determining that New York has modification jurisdiction necessarily determine that it should not decline jurisdiction as an inconvenient forum.
Section 75-d (subd 1, par [b], cl [i]) of the Domestic Relations Law requires that a State have a significant connection with the child while section 75-h (subd 3, par [b]) of the Domestic Relations Law speaks of a closer connection. While California has a significant connection with Scott, New York possesses a closer connection.
Section 75-d (subd 1, par [b], cl [ii]) of the Domestic Relations Law speaks to availability of substantial evidence in the State while section 75-h (subd 3, par [c]) of the *100 Domestic Relations Law searches whether it is more readily available in another State.
Since it has already been determined that there is not presently available in California substantial evidence concerning Scott’s present and future care, it follows that the “more readily available substantial evidence” test cannot be met.
In Matter of William L. v Michelle P. (99 Misc 2d 346), Judge Howard Levine invoked section 75-h of the Domestic Relations Law and declined jurisdiction of a petition filed in August, 1978. Even though he found New York possessed jurisdiction based on section 75-d (subd 1, par [b]) of the Domestic Relations Law since the parties were married in New York and divorced there in 1974, he was swayed by the fact that the respondent mother and the children had lived continuously in Mississippi from January, 1977 until May, 1978. He noted that Mississippi was the children’s home State, and had a closer connection with them.
I am in agreement with his view that the focus of the statute is on the child, and since New York possesses a closer connection with Scott the inconvenient forum section should not be applied.
JURISDICTION NOT DECLINED BECAUSE OF CONDUCT
Section 75-i of the Domestic Relations Law is essentially a variant of the familiar equitable maxim of “clean hands”. It exhorts a court to decline jurisdiction where a petitioner has engaged in the wrongful taking of a child from another State, or similar reprehensible conduct which doubtless refers to improperly retaining a child after a visit.
This section also forbids a court from exercising jurisdiction to modify a decree where a child has been improperly returned unless required in the interest of the child. This section, consistent with the act’s emphasis on what is best for the child, does not enjoin the exercise of jurisdiction if it is in the child’s interest to assume it, even if the child were wrongly removed or retained.
It is this court’s determination that Scott’s interests would be served by its exercise of jurisdiction were it to *101 find that Scott was wrongfully retained, a conclusion which the court refuses to draw.
At the time that this proceeding was commenced, Scott had been with his father for approximately one year, and by the time the memoranda were submitted he had been with his father in this State for almost two years.
This is not one of those reprehensible episodes where petitioner had brought Scott into New York under a false pretense and refused to return him on respondent’s request. Petitioner was open and forthright about his whereabouts and those of Scott at all times relevant to this proceeding.
There was never an attempt at concealment or interdiction of contact. Petitioner’s business address of many years standing, and his home address were well known to respondent. Both petitioner and Scott were readily accessible, but respondent never contacted them to request Scott’s return.
Nor did petitioner initiate this proceeding six months after Scott arrived here when technically New York had become his home State. Rather, he waited until it seemed apparent that respondent had eschewed her custodial responsibilities, and Scott had developed significant roots in his present community.
Finally, it is well to remember that in contemplating whether a party is entitled to equitable relief, their own conduct needs must come under scrutiny.
Respondent surreptitiously spirited herself and the children from New York where the parties had been married, and were living with them. She took them to California, a forum that knew nothing of them, and obtained an ex parte divorce which awarded her custody.
Such conduct constitutes predecree child snatching, a practice castigated by Professor Bodenheimer.[5]
Such conduct disqualifies respondent from possessing the clean hands requisite to cause this court to invoke section 75-i of the Domestic Relations Law.
*102 After deciding that it would exercise jurisdiction of this matter, a plenary hearing was conducted. The court heard testimony from petitioner, interviewed Scott in camera (Matter of Lincoln v Lincoln, 24 NY2d 270), and received into evidence reports from his school and the Boys Club.
It was evident that Scott, who is a superior student, physically active, and a gifted athlete was thriving in the companionship and custody of his father.
Petitioner has, at no small sacrifice, restructured his life so that he might concentrate on his parental responsibilities, and afford Scott a life experience enriched with a healthy comradery replete with shared interests and activities.
It is in Scott’s best interests that petitioner be granted custody.
The court is conscious that its determination will work a change of custody which normally must be predicated on a change of circumstances demonstrating the present unfitness of the custodial parent. (Matter of Nehra v Uhlar, 43 NY2d 242, supra.)
However, neither that precept, nor its holding that the priority given to the first parent awarded custody should constitute a weighty factor, is apposite in this case since the California decree did not emanate from a hearing based on the merits.
The Court of Appeals has stated that with respect to custody proceedings: “Generally, a determination of that issue should be made only after a full and plenary hearing and inquiry”. (Obey v Degling, 37 NY2d 768, 770.)
That statement continues to be the law of this State.
In Matter of Mitchell v Mitchell (67 AD2d 924), the Appellate Division reversed a Family Court custody determination which it found to be less than full and thorough since neither of the parties was given sufficient time to prepare their cases adequately, and present them effectively.
In Matter of Hendricks v Osborne (64 AD2d 629), the court rejected a party’s request to recognize a sister State’s decree awarding him custody of his children. The court stated that where custody is granted without a full adver *103 sary hearing in which parental fitness and attitude toward the child can be explored, little weight should be accorded to the resultant decree.
The California decree was on default and the merits of the action were never reached. In such an instance this court is entitled to make a determination of the merits with little, if any, reference to it.

. The PKPA is a legislative enactment of momentous import whose precipitate passage during the waning moments of the 96th Congress militate against the likelihood that an opportunity for reflective consideration preceded its adoption. As pointed out in Law and the Family, Child-Custody Decrees — Jurisdiction (Foster & Freed, NYLJ, April 24, 1981, p 1, col 1), the PKPA was passed through the ploy of attaching a revise
*89 version of the Wallop Amendment as an unprinted rider to a bill dealing with Medicare reimbursement.
The original drafts of the Wallop Amendment tracked the jurisdictional language of the UCCJA but due to the persistence and persuasiveness of the late Professor Brigitte Bodenheimer, the amended version contained language that strengthened the mandate for exclusive and continuing home State modification jurisdiction. Since the measure was hastily prepared and hurriedly enacted it failed to mandate such jurisdiction under every eventuality. Nor is it likely that if Congressional review were to occur would its infelicitous deviation from the UCCJA be permitted to remain extant.

. (Bodenheimer, Interstate Custody — Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA, 14 Family LQ 203.)

. Professor Bodenheimer’s firmly held belief that the language of the UCCJA vests exclusive continuing jurisdiction as long as one of the contestants continue to reside in the decree-granting State has led her to criticize Clark v Superior Ct. (supra) and Bosse v Superior Ct. (supra). (Bodenheimer, op. cit.)

. The propensity of members of the judiciary to reach out to confer jurisdiction upon themselves has been the subject of critical comments. (Commissioners’ Prefatory Note, UCCJA, 9 Uniform Laws Ann [1979 ed], p 111; Lynch, New York’s Custody Act, 51 NY State Bar J 625; Gennaro & Santoro, An Overview of the Uniform Child Custody Jurisdiction Act, 4 Seton Hall, Legislative J 155.)

. (Bodenheimer, op. cit. p 205.)