OPINION of the court
Stanley Gartenstein, J.
Three proceedings are presently before this court all involving a ruling on the same issues: (1) Petition to enforce visitation filed by the father of the two subject children; (2) Petition and order to show cause brought on by the mother in the Supreme Court, New York County, to modify visitation which has been referred to the undersigned by order of the Honorable Hortense W. Gabel, Justice, Supreme Court; (3) Petition and order to show cause to enforce summer visitation without the State of New York brought on by the father. Aside from these proceedings, various other criminal and civil actions both in the States of New York and Texas are now pending between various members of the respective families who have allowed themselves to be drawn into an incredibly bitter postmatrimonial dispute as surrogate combatants. *333 This bitter cross-country litigation is so involved that one suspects that, like the legendary Jarndyce family of Dickens’ Bleak House, this family will cease its race to the courthouse on every available pretext only when all sides run out of funds.
In the midst of this total warfare, two lovely children, the subject of this litigation, remain remarkably well adjusted, a bit disdainful over what they perceive to be adult foolishness, and most impatient for all the combatants to act mature enough to stop this pointless war.
The parties herein were apparently New York domiciliarios until they moved to the State of Texas where the father established lucrative business connections involving dental clinics. They were divorced there by decree entered on September 2,1981. Custody was awarded to the mother with liberal detailed visitation to the father. The decree reflects the minutiae of detail which ordinarily accompanies bitter negotiations and is specific about every conceivable contingency down to division of the teaspoons. Without belaboring the details of custody and visitation, the crucial portion of this decree upon which much litigation has and will center involves a provision that the children are not to be removed from the State of Texas by their mother in the absence of court permission unless the wife remarries. On December 3, 1981, the wife, relying on a “marriage” which was all form and no substance, removed the children from the State of Texas to re-establish her domicile with them within New York State. Her total absence from this State was some 27 months.
Needless to say, much litigation followed in the State of Texas, all at the instance of the enraged father, with the exception of one proceeding in the nature of habeas corpus successfully brought by the mother when the father, after one visit, apparently did not return the children. In spite of the fact that the detailed visitation obviously contemplates a close-at-hand situation between father and children, there has been a steadfast refusal on either side to be flexible in keeping with the realities of the changed situation which has gone as far as the father’s flying to New York for weekends.
*334 The validity of the mother’s de facto residence in New York has never been adjudicated. Time after time the father has attempted to bring his claimed violation of its decree before the Texas court in various forms via an esoteric assortment of proceedings none of which have as yet been adjudicated on the merits of this issue. There is now pending, however, in the District Court of Harris County, State of Texas, a motion brought by the father to adjudicate the mother in contempt, directly involving this issue. It was brought on as the latest of an ongoing series of proceedings in that State only after the three applications before us were brought and issue joined in this court.
The primary question currently presented is one of jurisdiction and, as such, reference must be made to the controlling statutory authority, to wit: the Uniform Child Custody Jurisdiction Act (UCCJA) codified in New York in article 5-A of the Domestic Relations Law and the Parental Kidnaping Prevention Act of 1980 (US Code, tit 28, § 1738A; tit 42, §§ 654, 655, 663 [PKPA]). Both statutes distinguish between jurisdiction to enforce the decree of a sister State as opposed to jurisdiction to modify it. It must be realized in the context of this litigation that while the assumption by a State of enforcement jurisdiction is an act consistent with the terms of a decree, the assumption of modification jurisdiction is essentially hostile to it.
In order to determine whether this court may properly assume modification jurisdiction, it is first necessary to note that while the underlying policies of the respective acts are identical, namely, “to curtail the ‘childnapping’ and forum shopping which, in the long run, had generated such instability for children in the past” (Fernandez v Rodriguez, 97 Misc 2d 353, 356), they contain fundamental differences; and where they do, the PKPA must be deemed controlling. The PKPA as a Federal enactment implements a policy of Federal pre-emption which must be accorded priority by virtue of the supremacy clause of the United States Constitution (Matter of Leslie L.F. v Constance F., 110 Misc 2d 86).
Pursuant to the terms of both acts, if a court of a sister State has made a custody decree, a court of this State may modify such determination only, if:
*335 (1) it has jurisdiction to make such a child custody-determination; and
(2) the court which rendered the decree no longer has jurisdiction or it has declined to exercise such jurisdiction to modify such determination.
Accordingly, when a court of this State is faced with a question as to whether it may properly assume modification jurisdiction, its inquiry must be threefold: first, it must be determined whether or not this court would have jurisdiction to render the decree in the first instance; second, whether or not the rendering State had jurisdiction to do so under provisions in substantial compliance with either the UCCJA or of the PKPA; third, whether or not at the time a second proceeding is commenced in this State, the rendering sister State court no longer had jurisdiction or declined to exercise it.
In defining the circumstances under which the respective States would have jurisdiction, the UCCJA and the PKPA differ. Nevertheless, a complete analysis of both statutes leads the court to conclude that no such modification jurisdiction exists at the present time.
The bases for UCCJA jurisdiction are specifically and exclusively enumerated in section 75-d of the Domestic Relations Law. One of them must be met for this court to exercise jurisdiction herein. (Matter of Potter v Potter, 104 Misc 2d 930.) Section 75-d of the Domestic Relations Law reads in relevant part as follows:
“1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree only when:
“(a) this state (i) is the home state of the child at the time of commencement of the custody proceeding, or (ii) had been the child’s home state within six months before commencement of such proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
“(b) it is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his *336 parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is within the jurisdiction of the court substantial evidence concerning the child’s present or future care, protection, training, and personal relationships; or
“(c) the child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child; or
“(d) (i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (a), (b), or (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.”
As a threshold, we reject the claim of emergency under section 75-d (subd 1, par [c]) of the Domestic Relations Law. This claim is predicated upon the alleged violent, often bizarre behavior of the father and its impact upon the girls. We note first that the claims of bizarre behavior are reciprocal. Further, it is clear from an interview with the girls, that contrary to the exaggerations of both opposing affidavits, the father is not Jack the Ripper nor is the mother Lucretia Borgia. Proof that we deal here with two very normal but angry people may be found simply by speaking to two lovely children who could never have turned out as they did if 1% of the mutual vituperation of the moving papers were" true. In short, we have here two hostile people whose behavior fits the mold of countless persons involved in matrimonial proceedings who are rational except toward each other. If anything, the girls have learned — as we all must in the process of growing — that adults too often act like children.
Applying the salient facts herein to the statute it is clear that this court would, in the absence of the pre-existing Texas decree, have jurisdiction to render a custody award pursuant to section 75-d (subd 1, par [a]) of the Domestic Relations Law. New York would qualify as the home State of the two subject children. The wife and the girls have resided in New York since December 3,1981 a period well over the six months necessary to meet the statutory definí *337 tion of home State found in subdivision 5 of section 75-c of the Domestic Relations Law. “‘Home state’ means the state in which the child at the time of the commencement of the custody proceeding, has resided with his parents, a parent, or a person acting as parent, for at least six consecutive months.”
Similarly, section 8 (subd [c], par [2]) of the PKPA (US Code, tit 28, § 1738A, subd [c], par [2]) would grant this court jurisdiction under the same six months’ “home State” provision.
Since the original exercise of Texas jurisdiction was in all respects in substantial accord with both the UCCJA and PKPA jurisdictional provisions, the only remaining stumbling block to the exercise of this court’s modification jurisdiction is the third of the three threshold questions outlined earlier. This court must still refuse to exercise its modification jurisdiction unless the sister State court no longer has jurisdiction or has declined to exercise it, thus vesting so-called “vacuum jurisdiction” in this court.
Under the express terms of subdivisions of the PKPA (US Code, tit 28, § 1738A, subds [d], [e]) (but not in the UCCJA) the jurisdiction of a State which has made a child custody determination in accordance with Federal standards continues as long as that State remains the residence either of the child or of any contestant, and that court has jurisdiction to determine custody under its own laws. Therefore, according to the PKPA, the father’s continued presence in the State of Texas vests continuing jurisdiction in that State unless Texas itself declines to exercise it.
We fail to find that the State of Texas has refused to exercise its jurisdiction within the meaning of the statute. Texas law prohibits any proceeding to amend a custody decree within the first year of its life unless an imminent emergency is present requiring forthwith court intervention (Texas Family Code, § 14.08). Apparently, finding no emergency to serve as a threshold to exercise of its jurisdiction to modify, the Texas court has disposed of the father’s numerous proceedings summarily. The Texas decree will become modifiable on September 2, 1982. Further complicating the situation is a Texas statute divesting its courts *338 of all jurisdiction in custody matters when the subject children have been out of that State for six months or more (Texas Family Code, § 11.052). We have been unable to locate any authority in that State construing provisions of Texas decrees similar to the one at issue either from the factual threshold of whether or not a marriage in form only qualifies as a proper basis for removal of subject children from that State; or, assuming, arguendo, a finding of violation of that decree, whether the underlying illegality of removal from that State in violation of its decree tolls the running of the six-month period for divestiture of Texas jurisdiction by its own statutes. Certainly, it would be arrogance on our part to decide an issue of apparent first impression in that State in the guise of assuming “vacuum” jurisdiction in this State. Moreover, so long as Texas, by its own statutes, will have at least prima facie jurisdiction to modify its own decree once the period of nonmodifiability expires on September 2, 1982, little over one month from now, we are of the opinion that the assumption of “vacuum” jurisdiction during the temporary period of nonmodifiability would be an abuse of discretion on our part lacking any Texas authority to the effect that this one-year period is one in which no jurisdiction exists there as opposed to jurisdiction which in fact exists but is not exercised. In either event, lacking clarification by the Texas court of its stance as regards its own statutes, we decline to exercise “vacuum” jurisdiction to modify. We have considered the Michigan case of Green v Green (87 Mich App 706) involving Michigan’s holding that Texas’ refusal to modify its decree vests “vacuum” jurisdiction in that court. That case is distinguishable first, on the basis of the as yet unadjudicated validity of the removal of the children from Texas as affected by the remarriage terms of the decree; second, by the almost de minimus period of one month now remaining until Texas can assume jurisdiction under its own statutes. Our stance is bolstered by the pendency of proceedings in that State at this very minute which should serve to clarify Texas’ legal posture.
We are fully cognizant that the visitation provisions of the divorce decree have become archaic and unworkable. As they stand, a burden is presented to both sides. This *339 much has been agreed between the parties who have even attempted at the court’s urging to renegotiate these provisions. The court’s refusal to accept jurisdiction is, by its own terms, temporary. In a very short time, the constraints set forth should be removed by action of the State of Texas. In that event, the undersigned will accept jurisdiction and will accede to the joint wish of the opposing parties to retain all proceedings before himself on condition first, that the request continue to be bilateral; second, that the parties understand that our personal concept of the court’s function in matters of this type is activist and committed to the proposition that once it has made its order, no nonsense will be tolerated insofar as.obedience is concerned.
Having refused modification jurisdiction, it is clear that at least so far as summer visitation is concerned, enforcement must go forward forthwith. The father has already lost 2 of his 6 weeks while proceedings have been pending. While we will not arbitrarily restore this time on some future occasion at the expense of the girls, we shall make every effort to bolster his meaningful relationship with them in the event modification jurisdiction is perfected in this court in the future. The mother shall deliver both girls to chambers of the undersigned at 10:00 a.m. on Tuesday, July 27. At that time, Mrs. Susan Turi, a juvenile rights social worker from the Legal Aid Society, shall be present to effectuate pickup and delivery. The father or his suitable representative shall be present to pick the girls up and accompany them to Texas. The girls shall be returned to the mother in the same manner at my chambers on Tuesday, August 24 at 11:00 a.m. or at such other time that day as shall be appropriate in accordance with flight schedules, provided same is cleared with my law assistant (no later than two weeks prior thereto), who shall communicate alternate arrangements to counsel by phone.
The application to have the father post a bond for the prompt return of the children is denied. The court has accepted a representation by the father’s counsel that the girls will be returned on time and that their presence in the State of Texas will not be used as a pretext for additional litigation there. We have accepted this representation upon the clear caveat that any failure to honor its *340 terms will be actionable personally against counsel under the Code of Professional Responsibility. This does not foreclose legitimate litigation such as may properly be maintained when the subject children are not within that jurisdiction. It simply insists that no litigation based upon the artificially created factor of the girls’ presence in Texas will be maintained, and any such litigation is specifically enjoined (Matter of Strecker v Strecker, 10 AD2d 312). In short, all parties know what good faith is. They may be assured that this court will not countenance the slightest departure from it. In the event this injunctive provision is violated, in addition to any other sanctions to be imposed, this court grants leave to the mother’s counsel in Texas to submit a copy of this order into evidence there should same become necessary.
Petitions granted and denied without prejudice as appropriate.