**Tess (Aigner) PIKE, Appellant,**

v.

**James A. AIGNER, Jr., Appellee.**

**No. 91–CA–000773–S.**

Court of Appeals of Kentucky.

April 10, 1992.

Sherry Brashear, Harlan, for appellant.

James S. Greene, Jr., Harlan, for appellee.

Before HAYES, HUDDLESTON and McDONALD, JJ.

HUDDLESTON, Judge.

Relying upon KRS 403.470(2), Harlan Circuit Court declined to exercise jurisdiction to consider Tess (Aigner) Pike's petition to modify a Texas decree awarding custody of the parties' minor daughter, Jame, to her former husband, James A. Aigner, Jr. Because we are satisfied that the lower court was authorized to hear this case, we reverse and remand for further proceedings.

Tess (Aigner) Pike and James A. Aigner, Jr., were married in Texas on October 1, 1979. One child, Jame, was born in 1980. The marriage was terminated by a 1981 Texas divorce decree which named James as the managing conservator and Tess as possessory conservator of the child. The child's physical custody was split between the parents and she was permitted to live with each for six months. Both parents were allowed liberal visitation rights during non-custodial periods. When the child entered school, James, as managing conservator, was to have custody during the nine-month school period and Tess was to have custody during the balance of the year. And again, each parent was to have liberal visitation.

During the summer of 1986, prior to the child's sixth birthday, James picked up their daughter from Tess's home to take her shopping. Instead, he spirited her away and ultimately removed her to the state of Florida. Tess's efforts and those of the authorities to locate the child proved fruitless.

Tess moved to Kentucky in July, 1988, and has lived in this state ever since. In late 1988, James contacted Tess requesting that she come to Florida and get their child. During the conversation, James informed Tess of the child's mental or emotional problems and of his intention to seek institutional care for their daughter.

Jame came to Kentucky on February 2, 1989, and she has lived in this state continuously since that time. Apparently, she has become integrated into her new social surroundings, has interacted positively with her four siblings, has attended school and has been active in her church.

In January 11, 1991, James contacted Tess and, relying on the authority of the Texas decree, demanded that Jame be returned to him.[1] On January 15, 1991, Tess responded by filing a petition seeking *de jure* as well as *de facto* custody of Jame; and three days later she obtained a temporary restraining order to prevent her daughter's removal from the state pending resolution of the custody issue.

On February 18, 1991, James filed a motion to dismiss Tess's custody petition asserting that the circuit court lacked jurisdiction to consider it. Both parties filed affidavits in support of or in opposition to the motion. Based on these affidavits, the circuit court found that Tess had improperly retained custody of her daughter and, in reliance on KRS 403.470(2), declined to exercise *in personam* jurisdiction. Tess argues on appeal that in doing so the court erred.

The Uniform Child Custody Jurisdiction Act, of which KRS 403.470(2) is a part, was adopted in 1980. According to KRS 403.-400, the Act was designed to:

(a) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(b) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(c) Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;

(d) Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

(e) Deter abductions and other unilateral removals of children undertaken to obtain custody awards;

(f) Avoid re-litigation of custody decisions of other states in this state insofar as feasible;

(g) Facilitate the enforcement of custody decrees of other states;

(h) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child; and

(i) Make uniform the law of those states which enact it.

The prerequisites necessary to the exercise of jurisdiction in child custody cases are contained in KRS 403.420:

(a) *This state is the home state of the child at the time of commencement of the proceeding,* or had been the child's home state within six (6) months before commencement of the proceeding and the

---

**1.** Tess suggests that James' paternal feelings were aroused by proceedings initiated by the Kentucky Cabinet for Human Resources to recoup public assistance payments.

child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; *or*
(b) *It is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least one (1) contestant, have a significant connection with this state,* and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; *or*
(c) The child is physically present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; *or*
(d) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (a), (b), or (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction. (Emphasis supplied.)

In this case, the circuit court could have exercised jurisdiction pursuant to Subsections (1)(a), (1)(b) or (1)(d). The parties do not dispute the fact that their child relocated to Kentucky with the consent of James, the managing conservator; nor is there any evidence of record to suggest that James' consent to this living arrangement, which remained in effect for some two and one-half years, was revoked prior to January 11, 1991.

As earlier noted, the circuit court declined jurisdiction based on its reading of KRS 403.470(2). The statute provides that:
Unless *required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody,* has improperly removed the child from the physical custody of the person entitled to custody or *has improperly retained the child after a visit or other temporary relinquishment of physical custody.* If the petitioner has violated any other provision of a custody decree of another state the court may decline to exercise its jurisdiction if this is just and proper under the circumstances. (Emphasis supplied.)

The provisions of KRS 403.470 do not come into operation unless the court has jurisdiction under KRS 403.420 to modify the custody decree of another state. "It is a codification of the clean hands rule, except that it differentiates between (1) a taking or retention of the child and (2) other violations of custody decrees." UCCJA § 8, Commissioners' note, 9 Uniform Laws Annotated 252 (1988).

Because these cases arise in a myriad of contexts, no single formula can resolve the issue whether jurisdiction should be declined by reason of conduct. The court must consider the totality of the circumstances in making such a determination. Relevant circumstances include, but are not limited to, the length of time the child has been in one of the several jurisdictions, the effect on the child of removing the child from one jurisdiction to another, whether subterfuge has been used, and whether either party had already sought protection of another court.

*Stokes v. Stokes,* 751 P.2d 1363, 1366 (Alaska, 1988).[2]

Guided by the comments of the Commissioners of the uniform laws and decisions from several of our sister states, we conclude that an approach to the exercise of jurisdiction in which the totality of the circumstances is evaluated is preferable to the mechanical application of the statute to deprive a court of jurisdiction when the greater part of the evidence pertaining to

**2.** See also, *Massey v. Massey,* 89 App.Div.2d 566, 452 N.Y.S.2d 101 (1982); *Leslie v. Constance,* 110 Misc.2d 86, 441 N.Y.S.2d 911 (N.Y.City Fam. Ct., 1981); *Nasica v. Nasica,* 12 Kan.App.2d 794, 758 P.2d 240 (1988); *Tettis v. Boyum,* 317 Pa.Super. 8, 463 A.2d 1056 (1983).

the child's interest is present in the state whose jurisdiction is invoked.

 Both Texas and Florida have enacted the UCCJA, but neither state is the proper forum to adjudicate custody. Florida was initially the child's home state, as that term is defined in KRS 403.410(5),[3] only because James took her there after he removed her from Texas without the consent of her mother and in violation of the provisions of a decree whose validity is unchallenged. None of the parties has any present or recent contact with Texas and, by virtue of the UCCJA, it has lost jurisdiction. Furthermore, it is a forum which is convenient to no one. Consequently, only Kentucky may properly be considered as the child's home state.

*Wieczorek v. Sebastian*, Ky.App., 751 S.W.2d 38 (1988), cited by James, is distinguishable. In that case children were brought from Ohio to Kentucky for a visit by their father who then refused to return them to their legal custodian, their mother. Inasmuch as the children obtained home-state status only as a result of the father's impermissive retention of custody, this Court refused to permit the circuit court to exercise jurisdiction to consider his motion for a modification of the custody decree. The home-state status in the instant case was the result of a two and one-half year consensual stay.

"Finally, it is well to remember that in contemplating whether a party is entitled to equitable relief [under KRS 403.470], [his] conduct must come under scrutiny." *Leslie v. Constance*, 110 Misc.2d 86, 441 N.Y.S.2d 911 (N.Y.City Fam.Ct., 1981). In violation of the custody decree he seeks to have the court honor, James spirited the child away in 1986 and successfully prevented Tess from determining her whereabouts for a period in excess of two years. On the other hand, the action taken by Tess is the antithesis of self-help which the UCCJA attempts to prevent. See *Wood v. Graham*, Ky., 633 S.W.2d 404, 406 (1982).

By bringing the matter promptly before the court, Tess avoided the use of subterfuge. Her actions were not those sought to be prevented by the sanction—the refusal to exercise jurisdiction to modify a custody award—imposed under KRS 403.470.

For these reasons, the order of Harlan Circuit Court declining to exercise jurisdiction is reversed and this case is remanded with directions to conduct an evidentiary hearing to consider Tess's motion for modification of the Texas custody decree.

All concur.

---

3. "Home state" means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as a parent, for at least six (6) consecutive months, and in the case of a child less than six (6) months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six (6)-month or other period.