**Charles J. RICHARDSON, Jr.**

v.

**Maria Dorval RICHARDSON.**

Supreme Judicial Court of Maine.

Argued May 10, 1994.
Decided July 11, 1994.

Laurie Anne Miller (orally), Ferris, Dearborn & Willey, Brewer, for plaintiff.

James Crotteau (orally), Pine Tree Legal, Machias, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and DANA, JJ.

DANA, Justice.

Charles Richardson appeals from a judgment entered in the Superior Court (Hancock County, *Mead, J.*) vacating the judgment of the District Court (Bar Harbor, *Staples, J.*) awarding him custody of his son. Charles contends that the Superior Court erred in ruling that the Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A (1994) (PKPA), prevented the District Court from awarding him custody. Finding no error, we affirm the judgment.

Charles and Maria Richardson were married in 1983. Their son, Charles J. Richardson III (C.J.), was born in Pennsylvania on December 3, 1983. Charles and Maria later separated, and Charles moved to New Jersey while Maria and C.J. remained in Pennsylvania. In 1989 the Court of Common Pleas of Philadelphia County awarded full custody of C.J. to Maria. Charles and Maria were divorced one year later. Sometime in 1990 Charles moved to Maine.

C.J. first visited his father in Maine in the spring of 1992. Charles and Maria later agreed that C.J. would visit Maine for six weeks beginning on July 16, 1992. Both before and during that visit C.J. told Charles that Maria had physically and verbally abused him. In August, two days before C.J. was scheduled to return to Pennsylvania, Charles filed a complaint for protection from abuse in the District Court.

The District Court awarded temporary custody of C.J. to Charles and ordered that a hearing be held on September 14, 1992. On the date of the hearing Maria filed a motion to dismiss the temporary order arguing that the District Court lacked jurisdiction because a Pennsylvania court had previously entered a custody order. The District Court denied the motion, ruling that it had jurisdiction "to protect children from alleged abuse, even though [the abuse] may have occurred in another state," and that it could exercise jurisdiction "as long as this child was present in this jurisdiction at the time the petition was acted upon."

The court heard testimony from several witnesses to determine whether abuse had occurred. At the close of the evidence the court found that there had been abuse, awarded custody of C.J. to Charles until June 30, 1993, and provided Maria with visitation rights. The order did not require Charles to take any further action in Pennsylvania with respect to the issue of custody.

The Superior Court vacated the custody order entered in the District Court and ordered that Maria's motion to dismiss be granted. Because Charles did not challenge the validity of the original custody order or the continuing jurisdiction of the Pennsylvania courts, the Superior Court concluded that "the courts of the state of Pennsylvania retain exclusive jurisdiction over this matter." This timely appeal followed.

When the Superior Court acts as an intermediate appellate tribunal, we review directly the record before the District Court to determine whether that decision contains any error of law that affects the validity of the judgment. *Ringuette v. Ringuette,* 594 A.2d 1076, 1078 (Me.1991). The sole issue before us is whether the PKPA precluded the District Court from awarding custody of C.J. to Charles.

The PKPA provides in pertinent part as follows:

> The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.

28 U.S.C. § 1738A(a).

In order to determine whether the above section's general prohibition against modify-

ing custody determinations applies, we must first determine whether the Pennsylvania order was "made consistently with the provisions" of the PKPA. To make this determination, we must consult subsection (c), which provides that a custody order is consistent with the PKPA if (1) the issuing court had jurisdiction under the laws of its state and (2) at least one additional factor, set forth in subparts (A) through (E), is satisfied.[1]

In the present case, it is undisputed that in 1989 the Pennsylvania court had jurisdiction to enter a custody order and that Pennsylvania was C.J.'s "home state." Therefore the Pennsylvania custody order was "made consistently with the provisions" of the PKPA. *See* 28 U.S.C. § 1738A(c)(2)(A).

■ The PKPA expressly provides, however, that a custody order may be modified "as provided in subsection (f)," which provides as follows:

> A court of a State may modify a determination of the custody of the same child made by a court of another State, if—
>
> (1) it has jurisdiction to make such a child custody determination; and
>
> (2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

Thus, in order to determine whether the District Court could properly modify[2] the Pennsylvania custody order, the following inquiry must be made: did the Pennsylvania courts lose jurisdiction or decline to exercise jurisdiction over the present custody dispute? Since the record is devoid of any such evidence, the exception contained in subsection (f) does not apply. The PKPA therefore prevented the District Court from modifying the Pennsylvania order and awarding custody of C.J. to Charles. *See Michalik v. Michalik,* 172 Wis.2d 640, 494 N.W.2d 391, 398 (1993) (PKPA precludes Wisconsin court from modifying child custody determination of Indiana court); *Archambault v. Archambault,* 407 Mass. 559, 555 N.E.2d 201, 206 (1990) (Massachusetts court properly stayed divorce proceeding where New Hampshire court had already entered temporary custody award); *S. Frederick P. v. Barbara P.,* 115 Misc.2d 332, 454 N.Y.S.2d 202, 206 (N.Y.Fam.Ct.1982) (because the original forum state did not refuse to exercise jurisdiction, New York court could not modify custody award).

---

1. Subsection (c) provides as follows:
   (c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—
   (1) such court has jurisdiction under the law of such State; and
   (2) one of the following conditions is met.
   (A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;
   (B)(i) it appears that no other State would have jurisdiction under subparagraph (a), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

   (C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;
   (D)(i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or
   (E) the court has continuing jurisdiction pursuant to subsection (d) of this section.
   28 U.S.C. § 1738A(c).

2. For the purposes of the PKPA, a "modification" is defined as "a custody determination which modifies, replaces, supersedes, or otherwise is made subsequent to, a prior custody determination concerning the same child, whether made by the same court or not." 28 U.S.C. § 1738A(b)(5). Under this definition, the District Court's order was a "modification" of the Pennsylvania order.

Charles argues that pursuant to subsection (c)(2)(C) of the PKPA, a custody order can be modified by a court from another state when abuse and neglect are involved. At the very least, he argues that the exercise of temporary jurisdiction is permissible. *See, e.g., Shores v. Shores,* 670 F.Supp. 774, 777 (E.D.Tenn.1987) ("there is nothing in the PKPA to prevent any court from assuming temporary jurisdiction when there are allegations of neglect, abuse, mistreatment, etc., to a child"). We disagree.

Contrary to Charles's contention, subsection (c) does not permit a second state to exercise jurisdiction where the original forum state has made a custody determination. As we noted above, this section defines when a custody determination is made consistently with the provisions of PKPA. If a prior custody determination is consistent with the PKPA, then pursuant to subsection (a), it *shall* be enforced by the courts of other states. 28 U.S.C. § 1738A(a).

If we were to adopt Charles's interpretation of subsection (c), we would be ignoring the express language of subsection (a), which provides for only one exception to the full faith and credit requirement. As we stated in *Spaulding v. Spaulding,* 460 A.2d 1360 (Me.1983):

> The PKPA essentially provides that any child custody determination made consistently with the provisions of the PKPA is required to be enforced according to its terms by the Courts of every other state and the authorities of a state are not permitted to modify a decree of another state *except as provided in subsection (f) of 28 U.S.C. § 1738A.*

*Id.* at 1363 n. 3 (emphasis added). Moreover, Charles's interpretation erroneously assumes that the courts of Pennsylvania would be unable or unwilling to protect C.J. from abuse. *Cf. Archambault,* 555 N.E.2d at 207 (in holding that a Massachusetts court did not have jurisdiction because of an earlier New Hampshire custody order, the court noted that there was "no reason to believe that New Hampshire courts are any less concerned than courts of the Commonwealth with the welfare of children who are the subjects of custody disputes").

As the Superior Court concluded in its well reasoned opinion, the PKPA prohibited the District Court from exercising jurisdiction because a Pennsylvania court had already entered a custody order. If the District Court had granted Maria's motion to dismiss, which it was required to do under the circumstances of this case, Charles would not have been prevented from filing a similar action in Pennsylvania and the issue of custody would most likely have been resolved months ago. Instead, the District Court entered an order in September 1992, and the issue of custody remains unresolved. This result is precisely what the PKPA was designed to prevent. *See Peterson v. Peterson,* 464 A.2d 202, 204 (Me.1983) (the PKPA was enacted "to prevent jurisdictional conflict and competition over child custody").

The entry is:

Judgment affirmed.

All concurring.