*689 OPINION OF THE COURT
Felice K. Shea, J.
In this custody proceeding, respondent father lives in Massachusetts and petitioner mother lives in New York with the parties’ seven-year-old daughter, Sabrina. Petitioner moves for custody of the child and asks that a hearing be held to determine the rights of the parties. Respondent father, who was awarded custody in a Massachusetts divorce decree, urges the court to decline jurisdiction. He cross-moves for an order dismissing the proceeding pursuant to the Uniform Child Custody Jurisdiction Act.
Petitioner was plaintiff in a recent contested action for divorce in Massachusetts. An examination of a certified copy of the Massachusetts proceeding, on file with this court, reveals that the issue of custody was litigated exhaustively. The Massachusetts court had the benefit of a report by a probation officer who made an investigation, interviewed the parties, and observed the interaction of each parent with the child. In a 20-page decision, the Massachusetts court made complete findings, largely unfavorable to the mother, and awarded custody to the father. Petitioner appealed, but no stay has been granted. She has refused to turn over the child to the father.
Petitioner urges the court to note that Sabrina has lived in New York with her or with the child’s maternal grandmother since March, 1977. Petitioner believes that she is the superior custodial parent, that the child wishes to stay with her, and that respondent is not genuinely interested in taking care of the child. Respondent points out that the same facts and arguments were before the Massachusetts court when it rendered its decision less than three months ago.
It is well-settled law that the presence of a child in this State confers jurisdiction to determine custody. (Matter of Nehra v Uhlar, 43 NY2d 242.) Moreover, there is no constitutional obligation in New York to recognize the prior custody award of another State. (May v Anderson, 345 US 528; Matter of Bachman v Mejias, 1 NY2d 575, 580; Matter of Hicks v Bridges, 2 AD2d 335, 339.) Even though the determination of a sister State is entitled to weight when it is recent and no change in circumstances is shown (see, e.g., People ex rel. "XX” v "ZZ”, 43 AD2d 196), the possibility of relitigation has encouraged child-snatching and forum shopping.
The New York Legislature recently addressed the problem *690 of the "interstate” child by enacting the Uniform Child Custody Jurisdiction Act (Domestic Relations Law, art 5-A).** "The basic purposes of the Act are to discourage continued controversies over child custody in order to secure the stability of a home environment for the child, to deter child abductions * * * and to promote interstate judicial assistance in custody cases.” (2 Foster and Freed, Law and Family, § 29:2, pp 339, 341 [1978 Supp]; Domestic Relations Law, § 75-b.)
Petitioner argues that New York’s Uniform Child Custody Jurisdiction Act is a new law, not yet interpreted by the courts, and that its constitutionality has not been passed upon. She alleges in addition that respondent has not established that Massachusetts has reciprocity.
Petitioner’s arguments are without merit. While this case may be the first to interpret the act after its effective date, the principles of the act were applied by a number of courts between the date of its enactment and the date it became effective. (See, e.g., Martin v Martin, 45 NY2d 739; Matter of Nehra v Uhlar, 43 NY2d 242, supra; Matter of Anonymous, 92 Misc 2d 280; Matter of Shalit, NYU, Nov. 1, 1977, p 7, col 2; Southam v Southam, NYU, Oct. 5, 1977, p 11, col 2.) Sensitive courts exercised restraint in custody matters even before passage of the act. (See, e.g., Matter of Lang v Lang, 9 AD2d 401; Matter of Sutera v Sutera, 1 AD2d 356; Matter of Turner v Ratnoff, 78 Misc 2d 878; Matter of Haines v Haines, 56 Misc 2d 440.)
The constitutionality of the act is not seriously challenged by petitioner. Statutes are presumed to be constitutional (McKinney’s Cons Laws of NY, Book 1, Statutes, § 150, subd b) and nothing has been put before the court that warrants further inquiry.
Although Massachusetts has not passed the uniform act, the validity of New York’s act does not depend on passage by other States. The Uniform Child Custody Jurisdiction Act is not a reciprocal law. (See 2 Foster and Freed, Law and Family, § 29:2, pp 339, 340 [1978 Supp].)
Under the act, the proper State to adjudicate custody is *691 ordinarily the State with the closest ties to the child and the family, where the trier of the facts has ready access to the evidence necessary for an informed decision. Ironically, if petitioner had chosen initially to litigate the issue of custody in New York, New York would have been the "home state” of the child (as defined in Domestic Relations Law, § 75-c, subd 5; § 75-d, subd 1, par [a]) and the preferred forum in which to make a determination of Sabrina’s best interests. The child has lived in New York since March, 1977, has attended school here, and both petitioner and the child have substantial contacts in this State. However, the act’s "home state” provisions must be read in light of the act’s general purposes of avoiding jurisdictional competition with courts of other States (Domestic Relations Law, § 75-b, subd 1, par [a]) and discouraging continued controversy and relitigation of custody decisions (Domestic Relations Law, § 75-b, subd 1, pars [d], [f]).
The act postulates a doctrine of forum non conveniens for custody disputes which also has application to the facts of this case. Section 75-h of the Domestic Relations Law permits a New York court to decline to exercise jurisdiction on the ground that another State is a more appropriate forum. In determining whether New York is an inconvenient forum, the interest of the child is to be considered (Domestic Relations Law, § 75-h, subd 3) and the court may take account of such factors as whether the parties have agreed on another appropriate forum (Domestic Relations Law, § 75-h, subd 3, par [d]) and whether the exercise of jurisdiction by New York would contravene any of the purposes of the act (Domestic Relations Law, § 75-h, subd 3, par [e]).
Most significant, the uniform act includes a "clean hands” provision which encourages New York courts to decline jurisdiction "[i]f the petitioner * * * has wrongfully taken the child from another state or has engaged in similar reprehensible conduct” (Domestic Relations Law, § 75-i, subd 1). Pursuant to subdivision 2 of section 75-i "[i]f the petitioner has violated any * * * provision of a custody decree of another state the court may decline to exercise its jurisdiction if this is just and proper under the circumstances.”
The circumstances of this case are poignant because, except for a short period, petitioner and her daughter have lived together since Sabrina’s birth. Understandably, petitioner is reluctant to relinquish the child to her father. Nonetheless, New York can be confident that the Massachusetts court *692 considered Sabrina’s need for stability, and reached a decision in Sabrina’s best interests, when it awarded custody to respondent three months ago. The fact that custody must shift is not critical.
The Court of Appeals in Matter of Nehra v Uhlar (43 NY2d 242, supra) had before it a fit mother who had kept her children for four and one-half years in contravention of the decree of an out-of-State court, and it affirmed an award of custody to the father. Chief Judge Breitel, speaking for a unanimous court, said (supra, p 248): "That a change in custody may prove temporarily disruptive to the children is not determinative, for all changes in custody are disruptive.” In the Nehra case, the mother had abducted the children, while here the mother has retained the child after an adverse decision of a sister State. In Nehra, an evidentiary hearing in New York was appropriate in view of the long time that had elapsed since the sister State decree. Notwithstanding these factual differences, the Court of Appeals application of the "clean hands” doctrine in the uniform act is instructive. After assuring itself that the best interests of the Uhlar children would be served, the Court of Appeals listed principles to be followed in interstate child custody disputes. As pertinent here, they are (Matter of Nehra v Uhlar, 43 NY2d 242, 251, supra): "Priority * * * as a weighty factor, should * * * be accorded to the first custody awarded in litigation * * * Denigrated in rank should be the consequences of child-snatching, flight from the courts of jurisdiction, and defiance of legal process and judgments.”
It would be both unjust and improper for this court to rehear the custody dispute at bar. A seven-year-old child may not be made the victim of prolonged uncertainty which would result from a new trial. She should not be the subject of more observation by professionals, more testing by experts and more needless trauma. Petitioner may not disregard the judgment of the Massachusetts court whose jurisdiction she invoked, nor may the scarce resources of this court be used to hear again what has been decided recently by another court of competent jurisdiction.
Pursuant to well-established principles of common law and in conformity with the policy of this State recently enunciated in Matter of Nehra v Uhlar (43 NY2d 242, supra) and embodied in the Uniform Child Custody Jurisdiction Act, the court *693 declines jurisdiction in this custody matter except to direct petitioner to turn over Sabrina to her father.
Accordingly, the motion is denied and the cross motion is granted. Settle order which shall include a plan for transition which will minimize disruption for Sabrina.

 Article 5-A of the Domestic Relations Law was passed July 1, 1977 and became effective September 1, 1978. It enacts in substance the Uniform Child Custody Jurisdiction Act promulgated in 1968 by the National Conference of Commissioners on Uniform State Laws, and approved in 1968 by the American Bar Association. As of December 20, 1978, 28 states have adopted the uniform act.