OPINION OF THE COURT
Edward J. McLaughlin, J.
A petition to modify an order made by another court pursuant to section 467 of the Family Court Act was filed in this court on June 26, 1981. Petitioner, the former husband of the respondent, seeks sole custody of his son.
A decree of divorce was filed and entered on September 21, 1978. The decree was made by the Supreme Court, State of New York, County of Onondaga. The basis of jurisdiction for the decree was a separation agreement entered into between the parties in New York which had been adhered to by the parties for one year prior to the commencement of the divorce proceeding. (Domestic Relations Law, § 170, subd [6].) The separation agreement entered into between the parties on December 21,1976 was filed in the Onondaga County Clerk’s office on June 6, 1978. The terms of the separation agreement were incorporated, but not merged, in the decree of divorce.
*501 The divorce decree ordered that “all matters arising in the future pertaining to the enforcement of this decree or to requested modifications of any provision thereof, whether pertaining to support, visitation or custody, be and the same hereby are referred to Family Court, Onondaga County, or the appropriate Family Court having jurisdiction of the matter.”
The separation agreement, which indicates that the parties were married in New York and lived in New York, provided that “the wife shall have custody of the children of the marriage.” The husband’s visitation rights were delineated in some detail.
The matter came on for a hearing on July 24, 1981. Petitioner appeared before Judge Morris Schneider of this court, by counsel. The respondent failed to appear. The court was informed that the child, who is the subject of this proceeding, lives in Connecticut, but runs away and is currently in New York with petitioner. The matter was adjourned until July 28, 1981 at 9:30 a.m.
On July 28, 1981, the matter came on before this court. There was no appearance by petitioner, but he was represented by counsel. There was no appearance by respondent. A Law Guardian was appointed for the child and the matter was referred to the Probation Department for a custody investigation. The matter was set down on the Trial Calendar.
In an envelope dated September 5, 1981, the court received from the respondent a motion to dismiss the petition. Respondent moves for dismissal on the grounds that the court lacks subject matter jurisdiction and that she was not served with notice of this proceeding in a timely manner. Also enclosed in the envelope were copies of papers prepared by respondent for a proceeding in Superior Court, Judicial District of New Haven at New Haven, Connecticut, on September 10, 1981. This court received additional papers related to a proceeding in Connecticut from respondent.
Petitioner submitted an affidavit in response to respondent’s motion to dismiss. He asserts, inter alia, that his son arrived from Connecticut by bus in the early morning *502 hours of June 25,1981, and that he had previously refused to return to his mother’s home in Connecticut following a visitation period, but had been persuaded to do so by his father. He states that the child who is the subject of this proceeding was born on March 21,1967. The family resided in Queens County, New York, until the time of the execution of the separation agreement on December 11, 1976. The separation agreement, he states, was originally filed on December 21, 1976, in Queens County. He prays the court to deny the respondent’s motion to dismiss and argues that this court has jurisdiction to hear the pending matter.
LAW
I. JUDICIAL NOTICE OF PREVIOUS DECISIONS
. Initially, the court takes judicial notice of its own records. (Matter of Denlow, 87 Misc 2d 410.) The parties to this proceeding have appeared before this court previously. On September 27, 1979, a petition to modify the visitation provisions of the divorce decree was filed. (Family Ct, Onondaga County, Docket No. F-962-79.) Respondent moved to dismiss. Respondent’s motion was denied and the petition was subsequently dismissed without prejudice for failure to provide the court with a copy of the divorce decree for which modification was sought. On March 3, 1980, a petition to modify an order made by another court was filed in this court to modify the visitation provisions of a divorce decree. (Family Ct, Onondaga County, Docket No. F-206-80.) A hearing was held on the petition. The petition was dismissed due to the fact that no change of circumstances was established which warranted a modification of the decree. (Matter of Mebert v Mebert, Family Ct, Onondaga County, Docket No. F-206-80, May 16, 1980.) During trial the parties entered into a stipulation which clarified the visitation provisions of the decree and was subsequently reduced to an order of this court. The order was signed on June 9, 1980 and filed and entered on June II, 1980.
On August 25, 1980, a petition for modification of an order of another court was filed. (Family Ct, Onondaga County, Docket No. F-911-80.) Again modification of the *503 visitation provisions of the divorce decree was sought. The parties submitted on papers and the court rendered a decision modifying the decree, making more specific the summer visitation provisions of the decree. (Matter of Mebert v Mebert, Family Ct, Onondaga County, Docket No. F-911-80, Dec. 5, 1980.) This decision was reduced to an order which was filed and entered on February 5, 1981.
II. MOTION TO DISMISS
A. PROCEDURE
The method of service and procedure for a hearing varies from article to article and part to part of the Family Court Act. (See, e.g., Family Ct Act, §§ 427, 433, 435, 525, 531, 617, 622, 623, 651, 652.) Where the method of procedure in any proceeding in which the Family Court has jurisdiction is not prescribed, the provisions of the CPLR apply. (Family Ct Act, § 165.) A motion to dismiss pursuant to CPLR 3211 (subd [a], pars 2, 8) may be made at any time before service of a responsive pleading is required. (CPLR 3211, subd [e].) There is no time limit, however, on motions to dismiss based on a lack of subject matter jurisdiction (CPLR 3211, subd [e]) and a challenge to personal jurisdiction is preserved if an objection to it is made in the motion to dismiss or in a responsive pleading, whichever is made first. (CPLR 3211, subd [e].)
It is customary in Family Court proceedings to proceed on oral motions. Usually a motion to dismiss for lack of personal jurisdiction is made at the initial hearing on a matter. Here, respondent made no motion, oral or written, at the first two appearances on this case. While it may be argued that by failing to raise an objection to the court’s personal jurisdiction over her in a timely manner, respondent waived her right to raise the issue at her convenience six weeks after the initial hearing date, the court will, in the interests of justice, consider respondent’s arguments.
B. PERSONAL JURISDICTION
There is no question but that this court has in personam jurisdiction over the respondent in this matter. The Family Court has jurisdiction to determine applications for the modification of the custody provisions of a divorce decree with the same powers as those possessed by the Supreme *504 Court when a referral has been made to the Family Court in the divorce decree. (Family Ct Act, § 467.) Pursuant to section 240 of the Domestic Relations Law, upon the application of either parent after such notice to the other party as the court shall direct, Supreme Court may modify any previous custody order it has rendered. (Cf. Pap v Pap, 51 AD2d 1091.) Thus, in New York, the Supreme Court has continuing jurisdiction over divorce decrees, and the Family Court sits with the power of the Supreme Court when a specific referral of jurisdiction has been made.
Respondent’s contention that the New York court lacked jurisdiction to render the divorce decree is also without merit. The parties to the divorce were married in New York and resided in New York as husband and wife. The husband was a resident of New York at the time the divorce action based upon the provisions of a separation agreement entered into in New York was commenced, and he had been a resident of New York for a continuous period of one year immediately preceding the commencement of the action. (Domestic Relations Law, §§ 170, 230.) New York law provides that in such a situation New York has personal jurisdiction over nondomiciliaries. (CPLR 302, subd [b].)
It is true that even though the Supreme Court had both the personal jurisdiction and subject matter jurisdiction necessary to enter a decree of divorce, it may have lacked the subject matter jurisdiction necessary to make a custody determination. (Vanneck v Vanneck, 49 NY2d 602.) There is no doubt, however, that the court had personal jurisdiction over the respondent at the time of the action for divorce and that this court has continuing jurisdiction over her at this time.
C. NOTICE
Respondent complains of the notice she was given in this matter. The matter now before the court is a modification of an order of another court filed pursuant to section 467 of the Family Court Act. Section 427 of the Family Court Act allows service of a summons and petition to be made by delivery of a true copy to the person summoned at least eight days before the time stated therein for appearance. *505 Whether or not such personal service is made, service by mail alone to the last known address of the person to be served at least eight days before the time stated in the summons for appearance is allowed. “If service is by mail alone, no default may be entered without proof satisfactory to the court that the respondent had actual notice of the commencement of the proceeding.” (Family Ct Act, § 427, subd [c].) In the written statement that accompanied her motion to dismiss, respondent states: “I received a summons on July 14 which was ‘signed’ by Madeleine [sic] Dwyer [Clerk of the Family Court] on July 10th requiring me to appear before the court in Syracuse on July 24th — 10 days later.” Thus, this court finds that actual eight days’ notice was received by respondent in this matter. Her failure to appear subjects her to the possibility of a default judgment being entered against her.
It should be noted that section 467 of the Family Court Act was amended by the New York State Legislature in its 1981 legislative session. (L 1981, ch 40.) Thus, this court can presume that the Legislature intended that modifications of orders of custody referred by the Supreme Court to the Family Court were to be governed by the procedural rules set forth in article 4 of the Family Court Act, since these rules are special rules and vary from the civil practice rules in many ways.
D. SUBJECT MATTER JURISDICTION
At the time of the entry of the original divorce decree, the Uniform Child Custody Jurisdiction Act had become effective in New York. (Domestic Relations Law, §§ 75-a — 75-z, as added by L 1977, ch 493, eff Sept. 1, 1978.) By its terms the law requires that jurisdiction over initial or modification of custody matters be assumed only when certain jurisdictional prerequisites are met. (Domestic Relations Law, § 75-d; People ex rel. Bruzzese v Bruzzese, 70 AD2d 957; Matter of William L. v Michelle P., 99 Misc 2d 346.)
The first jurisdictional basis set forth is when New York is the home State of the child at the time of commencement of the custody proceeding. (Domestic Relations Law, §75-d, subd 1, par [a].) “‘Home state’ means the state in which *506 the child at the time of the commencement of the custody proceeding, has resided with * * * a parent * * * for at least six consecutive months.” (Domestic Relations Law, § 75-c, subd 5.) The Appellate Division, Third Department, has construed this provision to mean that if a child has lived for six consecutive months in a jurisdiction even if he has lived for only a short time in the jurisdiction immediately prior to the commencement of a custody proceeding, the court is not precluded from exercising its jurisdiction if other jurisdictional requirements are met. (Clark v Clark, 67 AD2d 388.) When it is in the best interest of the child that a court assume jurisdiction because the child and at least one contestant has a significant connection with the State and there is within the jurisdiction of the court substantial evidence concerning the child’s present or future care, protection, training, and personal relationships, a court of this State may assume jurisdiction. (Domestic Relations Law, § 75-d, subd 1, par [b]; Matter of Bacon v Bacon, 97 Misc 2d 688; cf. Schaeffer v Schaeffer, 101 Misc 2d 118; Sharp v Aarons, 101 Misc 2d 323; Ruff v Ruff, 98 Misc 2d 934.) Indeed, it has been found to be error by the Appellate Division, Third Department, to refuse jurisdiction when it is in the child’s best interest to assume jurisdiction and there are significant contacts with New York and there is substantial evidence as to the child’s future care, protection, training, and personal relationships within New York. (People ex rel. Morgan v Morgan, 79 AD2d 1060; cf. Matter of Potter v Potter, 104 Misc 2d 930.)
The fact that another State may have jurisdiction does not prohibit this State from exercising its jurisdiction. (Matter of Potter v Potter, supra, at p 935; Matter of William L. v Michelle P., supra.) This is particularly so when New York rendered the original custodial decree. “The courts of other States where the act has been in effect for some time construe it to retain the principle of continuing jurisdiction unless contact with the child has virtually ceased, and even when another State has become the home State. (See Moore v Moore, 24 Ore App 673; Smith v Superior Ct. of San Mateo County, 68 Cal App 3d 457; Schlumpf v Superior Ct. of County of Trinity, 70 Cal App 3d 892.)” (Matter of *507 William L. v Michelle P., supra, at p 351; cf. Hricko v Stewart, 99 Misc 2d 266; but see Matter of Theresa H. v Pasquale G., 102 Misc 2d 759.)
In the present case the child has lived in New York off and on throughout his life, well over six consecutive months, although he had been in New York but a short while prior to the pending petition. The child’s father has significant contacts with New York. He lives in New York, he works in New York, he was married in New York, he signed a separation agreement granting custody of his children to his former wife in New York, and he was divorced in New York.
There is also substantial evidence in New York as to the present and future care, protection, training and personal relationships of the child, Thomas. We are dealing here not with a child of tender years who has been kept from returning from his custodial parent by restraints exercised for whatever reason by the noncustodial parent (People ex rel. Bruzzese v Bruzzese, 70 AD2d 957, supra; De Passe v De Passe, 70 AD2d 473), but with a young man of 14 years of age who managed to get himself from eastern Connecticut to his father’s home in Syracuse, New York. The child’s views on custody, while not determinative, should be considered by the court. (Dintruff v McGreevy, 34 NY2d 887.)
Thomas Mebert is in New York. It is in the best interest of the child, Thomas Mebert, that this court assume jurisdiction. There is substantial evidence in this jurisdiction concerning the child’s present and future care, protection, training, and personal relationships. His father, with whom he is living, lives in New York. Information about his present and future protection, care, schooling and other training is available in New York. Significant information about his personal relationships is available, since he is in New York and can testify before this court on this issue.
At the time that the instant proceeding was commenced, June 26, 1981, there was no action concerning the custody of the child pending in another State. (Domestic Relations Law, § 75-g, subd 1.) No communications on this matter were received from a court of another State. (Domestic Relations Law, § 75-g, subd 2.)
*508 Respondent has argued that New York is an inconvenient forum. (Domestic Relations Law, § 75-h.) The court makes the following findings:
1. Connecticut was recently the child’s home State.
2. Connecticut has a close connection with the child’s mother. New York has a close connection with the child’s father. The child is in New York, having removed himself from Connecticut. New York has a close connection with this young man.
3. There is substantial evidence concerning the child’s present and future care, protection, training, and personal relationships in New York.
4. The parties originally picked New York as the forum to decide the custody of the child.
5. The exercise of jurisdiction by this State would not contravene any of the purposes of the Uniform Child Custody Jurisdiction Act. (Domestic Relations Law, § 75-b.) Upon weighing the significant contacts of the child and the parties with the two jurisdictions, the court finds that on balance New York has more significant contacts than does Connecticut.
III. FEDERAL LAW
However, with the enactment of the Parental Kidnapping Prevention Act of 1980 (94 US Stat 3566), the Congress pre-empted* the law with regard to the requisite contacts required before jurisdiction can be exercised in custody matters. The Congress found that there was a growing number of cases annually involving disputes between persons claiming rights of custody and visitation and that “the laws and practices by which the courts of * * * [the various] jurisdictions determine their jurisdiction to decide such disputes, and the effect to be given the decisions of such disputes by the courts of other jurisdictions, are often inconsistent and conflicting”. (94 US Stat 3566, 3568.) Accordingly, the Congress established that the appropriate *509 courts of every State “shall enforce according to its terms, and shall not modify”, a custody decree (US Code, tit 28, § 1738A, subd [a]), except as specifically provided in the Federal statute. These provisions, essentially, are those jurisdictional bases set out in the Uniform Child Custody Jurisdiction Act and adopted by New York as section 75-d of the Domestic Relations Law. (US Code, tit 28, § 1738, subd [c].)
Where the Federal law differs from New York law is in the definitions used in the law. In the Federal law “home State” “means the State in which, immediately preceding the time involved, the child lived with *** a parent *** for at least six consecutive months *** Periods of temporary absence of any of such persons are counted as part of the six-month or other period”. (US Code, tit 28, § 1738A, subd [b], par [4]; emphasis added.) Thus, when the Federal law is considered, Connecticut is the home State of Thomas Hebert, in that he had lived in that State for the six months immediately prior to the filing on June 26,1981 of the petition to modify the custody provisions of the divorce decree and his bus trip to New York constituted a temporary absence from the State of Connecticut.
According to the Federal law the jurisdiction of a court of a State that has made a child custody determination continues as long as the court has jurisdiction pursuant to secton 1738A (subd [c], par [1]) of the United States Code. (US Code, tit 28, § 1738A, subd [d].)
New York is not the home State of the child as defined in the Federal statute and New York has not been the child’s home State within six months of the commencement of the proceeding. (US Code, tit 28, § 1738A, subd [c], par [2], cl [A] , subcls [i], [ii].) Nor does it appear that no other State has jurisdiction, since the child has lived in Connecticut for many years prior to the commencement of the instant proceeding. (US Code, tit 28, § 1738A, subd [c], par [2], cl [B] , subcl [i].) The child, Thomas Hebert, has not been abandoned (US Code, tit 28, § 1738A, subd [c], par [2], cl [C] , subcl [i]), nor is there any evidence submitted to this court that it is necessary for this court to take jurisdiction because the child is present in the State and “has been subjected to or threatened with mistreatment or abuse.” *510 (US Code, tit 28, § 1738A, subd [c], par [2], cl [C], subcl [ii].) This court is not aware that any other court has declined jurisdiction. (US Code, tit 28, § 1738A, subd [c], par [2], cl [D], subcls [i], [ii].) Nor does the court have continuing jurisdiction, since none of the foregoing bases for jurisdiction are present in New York. (US Code, tit 28, § 1738A, subd [c], par [2], cl [E].)
In New York the best interest of the child is of primary importance in custody determinations. (Matter of Bennett v Jeffreys, 40 NY2d 543.) The concern of the New York courts with the best interests of the child when, under traditional conflicts of law principles, significant contacts with New York have been established and there is substantial evidence as to the child’s future care, protection, training and personal relationships within the State, is reflected in the decisional law of New York. (See, e.g., People ex rel. Morgan v Morgan, 79 AD2d 1060, supra.) With the advent of the Uniform Child Custody Jurisdiction Act in 1978, certain jurisdictional bases were statutorily set out which had to be met before the New York courts could assume jurisdiction in custody matters and look to the child’s best interests (pp 505-506, supra). With the enactment of the Federal statute and its different definition of “home State” the jurisdictional bases which must be established before the court may look to the best interests of the child have been changed. This court has found no interpretation of the Parental Kidnapping Prevention Act of 1980 by a New York appellate court. From its plain reading of the statute (cf. United States v Sullivan, 332 US 689; McBoyle v United States, 283 US 25; Caminetti v United States, 242 US 470), this court must conclude that under the Federal law the best interest of the child cannot be looked at in a custody matter unless the jurisdictional prerequisites set forth in the Federal statute are met, including the requirement that the child “immediately preceding the time involved” must have lived in this State with one of its parents for at least six consecutive months. (US Code, tit 28, § 1738A, subd [b], par [4].)
Section 1 of article IV of the United States Constitution states: “Full faith and credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every *511 other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.” Commentators have noted that Congress under the full faith and credit clause has the “power to enact standards whereby uniformity of state legislation may be secured as to most any matter in connection with which interstate recognition of private rights would be useful and valuable.” (The Constitution of the United States of America: Analysis and Interpretation [Jayson ed], p 829.) Thus, this court must abide by the jurisdictional prerequisites enacted by the Congress for custody disputes.
The Family Court, State of New York, County of Onondaga, has no subject matter jurisdiction over the question of the custody of the child, Thomas Mebert. Accordingly, respondent’s motion to dismiss the proceeding is granted. The petition filed on June 26, 1981 seeking a modification of a divorce decree is, accordingly, dismissed with prejudice.

 Generally, when a State law actually conflicts with a Federal statute, it is preempted. (Lodge 76, Int. Assn. of Machinists & Aerospace Workers, AFL-CIO v Wisconsin Employment Relations Comm., 427 US 132, 138-139; Florida Lime & Avocado Growers v Paul, 373 US 132, 142-143; McDermott v State of Wisconsin, 228 US 115, 132; Savage v Jones, 225 US 501, 533.)