**Karen E. VONINSKI, Plaintiff-Appellee,**

v.

**Paul VONINSKI, Defendant-Appellee.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Oct. 26, 1982.

**874**

Rose Palermo and Abby R. Rubenfeld, Cheatham & Palermo, Nashville, for plaintiff-appellant.

Vincent Finocchio, Syracuse, N.Y., Jack A. Butler and H. Scott Williams, Butler, Lackey, Holt & Snedeker, Nashville, for defendant-appellee.

## OPINION

CONNER, Judge.

This is a case of first impression involving the effect of recently enacted federal legislation regarding child custody disputes when the custodial parent and non-custodial parent are residents of different states (here Tennessee and New York); and how that legislation interfaces with the relevant statutes of the respective states.

According to the pleadings and exhibits thereto the parties hereto were divorced in New York in October of 1978. The plaintiff-appellant, Karen E. Voninski,[1] was awarded custody of their two minor children, with whom she has been living in Tennessee since that time. The final decree ordered that the children spend the majority of their summer vacations with the defendant, Paul Voninski, in New York, and

1. Hereinafter the parties will be referred to as in the trial court or by their names, as abbreviated.

purported to retain exclusive jurisdiction over custody and visitation matters in the New York court.

On July 14, 1980, the New York court which had granted the divorce, in response to a contempt petition instituted by Mr. Voninski, issued an order whereby it claimed jurisdiction pursuant to the terms of the divorce decree. That court ordered Mrs. Voninski to produce the children in New York for summer visitation with Mr. Voninski. She did not participate in this proceeding except to make a special appearance through counsel to contest the jurisdiction of the New York court. However, subsequent to the entry of this order Mrs. Voninski did hand over the children for an abbreviated visitation with their father for the summer of 1980.

On June 1, 1981, Mrs. Voninski filed the instant petition to change visitation in the Circuit Court for Davidson County, Tennessee, the residence of plaintiff. The petition alleged that the minor daughter was "violently opposed to spending the summer with her father" and had refused to go to New York. It sought a hearing before the Tennessee court to modify the visitation arrangements for the daughter. No change was sought as to the minor son.

On July 17, 1981, while this petition was pending, Mr. Voninski again filed a contempt petition against Mrs. Voninski in New York. An August 18, 1981, show cause date was set there. Mrs. Voninski did not appear at that hearing. On August 13, 1981, Mr. Voninski moved to dismiss the Tennessee proceeding for lack of jurisdiction based on the terms of the 1978 divorce decree. An order was issued by the New York court on August 24, 1981, claiming jurisdiction pursuant to the divorce decree of 1978, and directing that a trial be set in New York.

A hearing was held in Tennessee on February 5, 1982, on the motion to dismiss filed

by the defendant and the trial court ruled that it lacked jurisdiction. No proof was heard from the parties. Plaintiff appealed from the Tennessee dismissal contending the jurisdictional requirements of federal law and the statutes of both states mandate that jurisdiction in custody and visitation matters involving these children lies only in Tennessee. Thus, an examination of the relevant federal and state laws is required to determine whether such jurisdiction lies in Tennessee where the children have resided for several years with their mother or in New York where the divorce was granted, custody awarded and visitation rights specified.

On December 28, 1980, the Parental Kidnapping Prevention Act of 1980, 28 U.S.C. § 1738A (hereinafter referred to as "PKPA") was enacted into law. A stated purpose was to establish national standards under which courts can determine their jurisdiction to decide interstate custody disputes.[2] PKPA dictates that full faith and credit be given to child custody determinations made by a court of another state if made consistently with the provisions of the statute. 28 U.S.C. § 1738A(a). Modification of such decrees is permitted only when the second state now has jurisdiction and the rendering state has lost or refused it. 28 U.S.C. § 1738A(f). The act reads in pertinent part:

Full faith and credit given to child custody determinations

(a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.

(b) As used in this section, the term—

\* \* \* \* \* \*

(4) *"home State" means the State in which, immediately preceding the time*

*involved, the child lived with his parents, a parent, or a person acting as a parent, for at least six consecutive months,* ... Periods of temporary absence of any such persons are counted as part of the six-month or other period.

\* \* \* \* \* \*

(c) *A child custody determination made by a court of a State is consistent with the provisions of this section only if—*

(1) *such court has jurisdiction under the law of such state;* and

(2) one of the following conditions is met:

(A) *such State (i) is the home State of the child on the date of the commencement of the proceeding,* or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

(B)(i) *it appears that no other State would have jurisdiction under subparagraph (A),* and (ii) it is in the best interests of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;

(D)(i) it appears that no other State would have jurisdiction under subpara-

---

**2.** 28 U.S.C. § 1738A(b)(3) provides that a "'custody determination' means a judgment, decree, or other order of a court providing for the custody *or visitation* of a child. ..." (Emphasis supplied.)

graph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or

(E) The court has continuing jurisdiction pursuant to subsection (d) of this section.

(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.

\* \* \* \* \* \*

(f) *A court of a State may modify a determination of the custody of the same child made by a court of another State, if—*

(1) *it has jurisdiction to make such a child custody determination; and*

(2) *the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.* (Emphasis supplied.)

28 U.S.C. § 1738A(a)–(d), (f).

As a federal jurisdictional statute, the PKPA establishes a policy of federal pre-emption in the area of custody jurisdiction. Consequently, under the Supremacy Clause of the United States Constitution,[3] the PKPA takes precedence over either the Tennessee or New York Law and must be first consulted in determining jurisdiction in custody disputes. *See Lodge 76, International Association of Machinists and Aerospace Workers v. Wisconsin Employment Relations Commission,* 427 U.S. 132, 138,

139, 96 S.Ct. 2548, 2552, 49 L.Ed.2d 396 (1976); *Leslie L.F. v. Constance F.,* 110 Misc.2d 86, 441 N.Y.S.2d 911, 913 (Fam.Ct. 1981); *Mebert v. Mebert,* 111 Misc.2d 500, 444 N.Y.S.2d 834, 839, 840 (Fam.Ct.1981). In this judicial maze, the federal act, however, directs one straight back to state law since the first of the jurisdictional prerequisites of the PKPA is that the state court must have jurisdiction under its own laws. *See* 28 U.S.C. § 1738A(c)(1), *supra.* Moreover, if jurisdiction was originally in New York that jurisdiction must have been lost or declined in order for Tennessee to modify the New York decree. 28 U.S.C. § 1738A(f)(2).

No argument is advanced that the initial New York decree of October 4, 1978, was entered without jurisdiction. Therefore, that decree is entitled to enforcement unless modified as provided in 28 U.S.C. § 1738A(f), *supra.* In reiteration, modification by a court of Tennessee is permissible in the circumstances of this case only if (1) Tennessee has jurisdiction to make a custody determination, and (2) New York no longer has jurisdiction or has declined to exercise such jurisdiction to modify its initial decree. *Ibid.*

In further reiteration, jurisdiction to make a child custody determination pursuant to the PKPA requires in part that jurisdiction exist under the court of the forum itself. Pursuant to 28 U.S.C. § 1738A(c), a custody determination is consistent with the provisions of the PKPA only if: (1) the court making the determination has jurisdiction under the law of such state, and (2) one of five conditions is met, the cornerstone being that the state is either the "home state" of the child on the date of the commencement of the proceeding or had been the child's home state within six months before the date of the commence-

---

**3.** This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the

judges in every state shall be bound thereby, any thing in the Constitution or laws of any state to the contrary notwithstanding. U.S. Const. art. VI, § 2.

ment of the proceeding. *See* 28 U.S.C. § 1738A(c)(2)(A)–(E), *supra*.

The conditions enumerated in subsection (c)(2) of PKPA closely parallel those of the Uniform Child Custody Jurisdiction Act,[4] now adopted by over half the states, with one major exception. That is the addition in the PKPA of the language in subparagraph (B): "(i) it appears that no other State would have jurisdiction under subparagraph (A)." By relegating subparagraph (B) to a contingency status only to be employed when the home state requirement of (A) is not met, the Congress in the enactment of the PKPA established a clear preference for "home state" jurisdiction. *See Virginia E.E. v. Alberto S.P.*, 110 Misc.2d 448, 440 N.Y.S.2d 979 (Fam.Ct.1981). *See also* Foster and Freed, "Law and the Family: Child-Custody Decrees—Jurisdiction," N.Y.L.J., p. 1. col. 1 (April 24, 1981). Thus, if Tennessee has jurisdiction under its own laws as the "home state" the PKPA mandates that Tennessee is the appropriate jurisdiction to litigate custody and visitation questions regarding the Voninski children.

In deciding whether Tennessee has jurisdiction pursuant to the PKPA, we must first determine whether the jurisdictional requirements of the Tennessee Child Custody Act are satisfied. In 1979 the Tennessee Child Custody Act, T.C.A. § 36–1301 to –1325, was adopted by the legislature. It also is a slightly modified version of the Uniform Child Custody Jurisdiction Act. Pursuant to its terms, a court of Tennessee may modify a valid custody decree of another state only if:

(1) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this chapter . . . and

(2) the court of this state has jurisdiction. T.C.A. § 36–1315(a). By this section, Tennessee courts have the authority to determine both whether the prior decree state meets Tennessee jurisdictional prerequisites and whether Tennessee meets those prerequisites.

To determine the first question, we must examine the jurisdictional prerequisites of Tennessee law, set out in T.C.A. § 36–1303 as follows:

*Jurisdiction to make custody determination.—*(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) *This state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of the child's removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this state; or*

(2)(A) *It appears that no state has jurisdiction under subsection (a), or each state with jurisdiction under subsection (a)*[5] *has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child; and*

(B) *The child and at least one contestant have a significant connection with this state; and*

---

**4.** *See Uniform Child Custody Jurisdiction Act (ULA) §§ 2, 3, 14.*

**5.** Reference to "subsection (a)" here must be viewed as a typographical error in the official version of the law. The reference as stated is unclear; subsection (a) has three parts, (1), (2) and (3), and it makes no sense to state that if jurisdiction does not exist under any one of the three sub-parts, then it exists under one of them, subparagraph (2). It is more likely that the reference should read "subsection (1)," the home state basis for jurisdiction, so that the section would offer an alternative basis for jurisdiction if no state can qualify as the home state. This reading is also consistent with similar language in the PKPA. *See* 28 U.S.C. § 1738A(c)(2)(A) and (B).

(C) There is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships; and

(D) It is in the best interest of the child that a court of this state assume jurisdiction; or

(3) It appears that no state has jurisdiction under subsections (a) or (b) or each such state has refused jurisdiction on the ground that this is the more appropriate forum to determine child custody, and it is in the best interest of the child that a court of this state assume jurisdiction.

(b) Except under subsection (c) of this section, physical presence in this state of the child, or of the child and one (1) of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

(c) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his or her custody.

(d) Jurisdiction shall not be exercised to modify an existing custody decree except in accordance with § 36–1315. (Emphasis supplied.)

*Definitions.*—As used in this chapter:

. . . . .

(5) "Home state" means the state in which the child immediately preceding the time involved lived with his or her parents, a parent, or a person acting as parent, for at least six (6) consecutive months, and in the case of a child less than six (6) months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six (6) months or other period; . . .

■ We believe that the language of the Tennessee Act, like that of the PKPA, establishes a preference for home state jurisdiction in interstate custody disputes. From a literal reading of T.C.A. § 36–1303(a)(2)(A)–(D), this court finds that the

factors listed in (B)–(D)—significant connection with this state, availability of substantial evidence concerning the child, and the best interest of the child,—are relegated to a contingency status only to be employed when the home state requirement of subsection (1) is not met. They key word here is the conjunction "or" found at the conclusion of the home state preference advanced in T.C.A. § 36–1303(a)(1) as opposed to any other connecting language such as the conjunction "and." This conclusion is completely consistent with prior law in Tennessee. In *Hines v. Hines,* 220 Tenn. 437, 418 S.W.2d 253 (1965), before the conception or enactment of the federal or Tennessee statutes we held that jurisdiction to decide matters of custody and visitation follow the domicile of the custodial parent and the children. *Id.* 418 S.W.2d at 254. More recently in *Finney v. Finney,* 619 S.W.2d 130 (Tenn.App.1981), which case controls as to jurisdiction under Tennessee law, we emphasized the predominance of the home state criteria in deciding custody jurisdiction under the Tennessee Child Custody Act. In *Finney,* Judge Lewis, in behalf of a unanimous court, said:

> While the Tennessee Child Custody Act . . . is substantially similar to the Uniform Act, our legislature did not see fit to include language from the model act permitting jurisdiction when "it is in the best interest of the child that a court of this State assume jurisdiction because . . . the child and his parents, or the child and at least one contestant, have a significant connection with this State. . . ." Uniform Child Custody Jurisdiction Act (U.L.A.) § 3(a)(2)(i).
>
> T.C.A. § 36–1303 is the jurisdictional section of the Tennessee Child Custody Act and, unlike the model Act, the best interest of the child is not a jurisdictional factor pursuant to T.C.A. § 36–1303.

While the child was physically present in Tennessee when the instant suit was filed, the proof is clear that Tennessee was not the child's "home state" when

suit was filed. Plaintiff and defendant were married in Tennessee but immediately moved to Texas where they resided throughout the entire course of their marriage. The child was born and resided in Texas with its parents. When plaintiff came to Nashville with the child in September, 1979, it was only for a visit. She at all times intended to return to Texas. On September 22, 1979, defendant, along with his mother, sister, and brother-in-law, came to Nashville from Texas to get plaintiff and the child, and it was plaintiff's intent at that time to return to Texas with defendant and the minor child. Plaintiff testified that the reason she did not return to Texas with her husband was an altercation which occurred when her sister-in-law came into plaintiff's bedroom where plaintiff was packing to return to Texas with her husband. She testified that the minor child was asleep and that the sister-in-law bent over the playpen to get the child and that when she did so, plaintiff shoved her back, then everybody in the house wound up in the bedroom and "at that point everybody lost control of everything." This occurred on September 22. Five days later, on September 27, plaintiff signed her complaint for divorce and custody of the minor child and the complaint was filed on October 2, 1979.

*The Tennessee Child Custody Act contemplates that Tennessee courts will have jurisdiction: where Tennessee is the home state; where no other state has jurisdiction as home state, and there are significant connections in Tennessee; where other courts have deferred to Tennessee as the preferable forum. The Act does not contemplate that Tennessee courts would defer to another state where there were no significant connections in that state.*

*The Act does not contemplate that jurisdiction may exist concurrently in a "home state" and a state with significant connections. If another state has satisfied the definition of "home state" set out* *at T.C.A. § 36–1302(5), that state may assert jurisdiction to the exclusion of Tennessee even if Tennessee has significant connections and it is in the child's best interest that Tennessee courts assert such jurisdiction.*

*In the case at bar, Texas was the "home state" of the minor child at the commencement of the proceedings and Texas had exercised jurisdiction by awarding custody of the child to the defendant herein. (Emphasis supplied.)*

*Id.* at 132, 133.

Therefore, under our law if there is a "home state" jurisdiction lies in custody and visitation matters whether it be Tennessee or otherwise. Stated differently, if another state by its status as the home state, may exert jurisdiction under the Act to the exclusion of Tennessee, even where Tennessee satisfies the "significant connections" and "best interest" conditions, then Tennessee may do likewise when it qualifies as the home state.

■ An analysis of the relevant New York custody statute and recent case law in that state construing the effect of PKPA leads us to precisely the same conclusion. The New York Act, N.Y.Dom.Rel.Law § 75–a to –z (D.R.L.), which also varies slightly from the Uniform Act, provides in pertinent part as follows:

1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree only when:

(a) this state (i) is the home state of the child at the time of commencement of the custody proceeding, or (ii) had been the child's home state within six months before commencement of such proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as a parent continues to live in this state; or

(b) it is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is within the jurisdiction of the court substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(c) the child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child; or

(d)(i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (a), (b), or (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.

D.R.L. § 75–d(1).

A careful reading of the New York statute reveals alternative bases for jurisdiction. Though the New York statute does not make "home state" residency the sole criteria regarding jurisdiction (as is the case with the Tennessee statute where present if read literally and as we have so held in *Finney* and herein) it is certainly the first criteria. Moreover, recent New York cases have interpreted the federal statute as indeed pre-empting its law because of the supremacy clause, and have further held that 28 U.S.C. § 1738A(b)(4) requires that the child must have lived in New York with one of its parents for at least six consecutive months "immediately preceding the time involved." *Mebert v. Mebert,* 111 Misc.2d 500, 444 N.Y.S.2d 834 (Fam.Ct. 1981).

■ In the instant case New York does not meet its six-month residency requirement for home state jurisdiction since the children have not resided there since 1978.

D.R.L. §§ 75–c(5), 75–d(1)(a). A second "alternative" basis for jurisdiction under the New York law, a best interest of the child standard, was called "superfluous" by one New York court, where that same provision is used in the PKPA. *See Virginia E.E. v. Alberto S.P., supra* 440 N.Y.S.2d at 984. However, assuming *arguendo* that it should in fact be employed, we do not believe the two requirements imposed by that standard can be met in New York in the instant case. They are:

(b) it is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is within the jurisdiction of the court substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

D.R.L. § 75–d(1)(b).

The significant connection requirement of D.R.L. § 75–d(1)(b) is not satisfied since neither child now has any connection with New York State other than to visit their father. Visitation alone is insufficient to meet the significant connection requirement under New York law. *William L. v. Michele P.,* 99 Misc.2d 346, 416 N.Y.S.2d 477 (Fam.Ct.1979). The mere fact that the original decree was rendered in New York is also insufficient to establish a present significant connection. *See Matteson v. Matteson,* 379 So.2d 677, 680 (Fla.App.1980).

 Moreover, the absence of a significant connection precludes compliance with the additional "substantial evidence" requirement of D.R.L. § 75–d(1)(b). The standards imposed by the New York courts to satisfy the substantial evidence criteria require that the forum have "optimum access to relevant evidence" about the children. *Vanneck v. Vanneck,* 49 N.Y.2d 602, 427 N.Y.S.2d 735, 404 N.E.2d 1278 (1980). Reason dictates that this standard can rare-

ly, if ever, be met where the children have been absent from the state for over four years. *See Steinman v. Steinman,* 80 A.D.2d 892, 436 N.Y.S.2d 901 (1981). Their home, teachers, doctors, friends and acquaintances are all in Tennessee.[6] Furthermore, the Commissioners' Notes to this section in the UCCJA point out that this is only an alternative to the preferred home state jurisdiction and stress that the purpose is to limit, not expand jurisdiction. 9 Uniform Laws Annotated § 3. *See also Leslie L.F. v. Constance F., supra.*

*See also William L. v. Michele P., supra,* where prior to the adoption of PKPA the New York court declined to assume jurisdiction on facts analogous to those alleged here. There Mississippi was the children's home state and was deemed to have a closer connection with them even though New York had rendered the original decree. In that case the court noted:

> ... While New York and Mississippi each have roughly equal connections with one parent, New York really has had only scant contact with the children since they left the State shortly after the divorce was granted in 1974—a sum total of three summer visitation periods before the petition was filed. Indeed, but for the fact that the original divorce decree awarding custody to the mother was rendered in New York, the contacts between the children and this State clearly would have been weaker support for this court's acceptance of jurisdiction under section 75–d. Mississippi, on the other hand, has been the state of continuous residence of the children since January, 1977. It, and not New York, has the primary *parens patriae* interest, and the more substantial nexus.

416 N.Y.S.2d at 482.

Under the facts of the instant case, it is clear to us that New York "does not now have jurisdiction under the jurisdictional prerequisites substantially in accordance with this chapter." *See* T.C.A. § 36–1315(a), *supra.* Since both children involved in the dispute have continuously resided with the petitioner in Davidson County, Tennessee, since 1978, Tennessee, not New York, satisfies the jurisdictional prerequisites of T.C.A. § 36–1303(a)(1) as being the home state.

Even though Tennessee's status as the home state is sufficient by itself to confer jurisdiction in the instant case, just as is the case with New York law the additional factors listed in § 36–1303(2)(B)–(D), *supra,* and discussed at page 14, *supra,* as they related to New York law support our conclusion.

Therefore, we hold: (1) that New York no longer has jurisdiction "under jurisdictional prerequisites substantially in accordance" with the Tennessee Child Custody Act; and (2) that Tennessee, by its status as the home state, has jurisdiction under the Tennessee Act. Furthermore, since Tennessee has jurisdiction under its law and since Tennessee is the home state, Tennessee has jurisdiction to modify the New York custody decree pursuant to the provisions of the PKPA. *See* 28 U.S.C. § 1738A(a), (c), (f), *supra.*

Mr. Voninski next maintains that New York was exercising jurisdiction in conformity with the Tennessee Child Custody Act because New York, not Tennessee, was the home state at the time of the commencement of the proceedings. However, the defendant acknowledges that this argument prevails only if we consider that the action in question commenced in 1978 when the divorce was granted and that the proceedings have continued since then. We are unable to so hold. When the Tennessee suit was filed, on June 1, 1981, there were

---

**6.** It should be noted that the same best interests of the child standard, based on significant connections and availability of substantial evidence, is one of the alternative jurisdictional prerequisites of the PKPA in the event there is no home state jurisdiction. Just as that standard cannot be satisfied under New York law by the alleged facts of the instant case, it also cannot be satisfied under the PKPA. 28 U.S.C. § 1738A(c)(2)(B).

no matters pending in New York relative to this case and no jurisdictional basis upon which to institute any modification attempt in New York. We agree with the plaintiff's analysis that the fact that the defendant subsequently filed a contempt petition in New York is irrelevant to the jurisdiction question.

■ Mr. Voninski argues further that the intention of the parties and the trial judge to have the court in New York retain jurisdiction over any future custody matters compels a finding that New York has jurisdiction under the Tennessee Act. We cannot agree. Only in the absence of explicit jurisdictional prerequisites in the statutes would these factors support continued custody jurisdiction in New York. We believe that the mere intention of the parties and the New York court to have that court retain jurisdiction does not meet the explicit jurisdictional prerequisites of federal, Tennessee or New York law, as previously discussed, and is insufficient to confer jurisdiction by agreement when federal and state law is to the contrary.

■ Finally, the defendant contends that the trial court correctly declined jurisdiction to modify the New York decree pursuant to T.C.A. § 36–1309(b). This section of the Tennessee Child Custody Act states in relevant part:

> ... If the petitioner has violated any other provision of a custody decree of another state the court, *subject to § 36–1315(a),* may decline to exercise its jurisdiction if this is just and proper under the circumstances. (Emphasis supplied.)

T.C.A. § 36–1309(b).

Mr. Voninski urges this court to consider the acts of Mrs. Voninski in evading the orders of the New York court, as sufficient basis for the trial court's decision to decline modification jurisdiction. The defendant's argument that plaintiff acted in bad faith in denying him visitation with his children for all but twelve days in the summer of 1980 is not without some merit. Further-

more, it is unfortunate that Mrs. Voninski deprived Mr. Voninski of the opportunity for visitation in the summer of 1981 by waiting until the "midnight hour" to file her petition for change of visitation. These factors, however, do not sustain a finding that the trial court properly declined jurisdiction pursuant to T.C.A. § 36–1309(b). As the plaintiff correctly points out, this section of the Tennessee Act may only be invoked "subject to § 36–1315(a);" or in other words, only if New York has jurisdiction substantially in accordance with the jurisdictional prerequisites under § 36–1303. As discussed above, this requirement has not been met. Jurisdiction is in Tennessee, not New York, regardless of any heavy handed actions of the plaintiff.

We recognize that while the PKPA and the Tennessee Act are of great benefit to the judiciary in deciding custody matters in an uniform manner, these acts are by no means perfect. For instance, the Tennessee Act seeks, as one of its purposes, to assure that litigation concerning custody of a child take place in the state where the child and his family have the "closest connection" and where "significant evidence" concerning the child is available. T.C.A. § 36–1301(a)(3). Yet, another stated purpose is to "facilitate the enforcement of custody decrees of other states." T.C.A. § 36–1301(a)(7). Often, as in the instant case, these purposes are in direct conflict. Furthermore, the emphasis of the PKPA and the Tennessee Act on home state jurisdiction can have adverse consequences. Under certain circumstances it allows, if not promotes, a custodial parent to move from state A to state B and at the last second to contest the action of the court of state A in state B in hopes of a better result there where in many instances the non-custodial parent is at a distinct disadvantage in terms of ability to litigate. These are bothersome problems for this court, but as we construe the federal act and its sister legislation in Tennessee, ones over which we have no control. Clearly, neither of these laws is perfect, but they have provided a foundation on which to

build in equitably resolving the confused area of interstate custody jurisdiction.

In final summation, we will attempt to reduce our holding from this legal maze to some reasonably understandable layman's language. The federal statute must be given priority under the supremacy clause. First and foremost, it mandates "home state of the children" jurisdiction where the law of the home state so provides. Tennessee is clearly the home state under any of the existing statutory or case law tests. Under the Tennessee Child Custody Act itself, Tennessee as the home state has jurisdiction. New York case law is entirely consistent with this result.

Accordingly, the motion to dismiss in the trial court should have been denied. This cause is reversed and remanded for a hearing on the merits of plaintiff's petition. The costs are taxed against the defendant.

REVERSED AND REMANDED.

TODD, P.J. (M.S.), and CANTRELL, J., concur.