**STATE of Tennessee, Appellee,**

v.

**Jerry Wayne HERNDON, Appellant,**

Court of Criminal Appeals of Tennessee,
at Jackson.

Sept. 4, 1985.

Permission to Appeal Denied by
Supreme Court Nov. 25, 1985.

W.J. Michael Cody, Atty. Gen. & Reporter, William Barry Wood, Asst. Atty. Gen., Nashville, Jerry Woodall, Dist. Atty. Gen., Leigh Grinalds, Asst. Dist. Atty. Gen., for appellee.

Carthel L. Smith, Jr., Smith & Milam, P.C., Lexington, for appellant.

## OPINION

O'BRIEN, Judge.

This case derives from denial of a petition for writ of habeas corpus in the Henderson County Circuit Court.

The record indicates that Jerry Wayne Herndon and Celina Fay Herndon were divorced in Chester County in July, 1980. Custody of a minor child, Christopher Wayne Herndon, then five years of age, was awarded to the child's father by agreement between the parties. Celina Herndon removed herself to Las Vegas, Nevada in July, 1980, where she married Ron Laster. As nearly as can be gleaned from the record, Celina Laster had two daughters, fruit of a marriage prior to her union with Herndon. In November, 1982 she received a report from the school attended by her daughters that one of them had been sexually abused by Herndon, prior to her divorce from him. For some reason she became concerned about the welfare of Christopher and contacted her mother in Tennessee. Mrs. Laster's mother persuaded Jerry Herndon to allow her to take Christopher to Las Vegas for Thanksgiving. Shortly after they arrived there Mrs. Laster contacted the Nevada State Welfare Division and petitioned a Nevada court to modify the decree of divorce to award custody of the child, Christopher Herndon to her. On January 20, 1983 counsel for each of the parties stipulated to an order for a child custody investigation in the Nevada District Court. The completion of that investigation took the better part of a year. The report recommended that the child Christopher Herndon be placed in the temporary custody of his father under the supervision of the Tennessee Department of Welfare, subject to a review in six months for a final custody determination. It was recommended that during the six month interval this appellant undergo a psychological evaluation under the direction of the Tennessee Welfare Department.

This record does not include any transcript of the Nevada court proceedings

therefore it is impossible to determine exactly what took place in that court. There is an affidavit of a Nevada police officer included among the extradition documents which relates that on November 17, 1983 there was a custody hearing in the Clark County, Nevada District Court in which the judge of that court ordered Christopher Herndon to remain in custody of his mother pending psychiatric evaluation of the defendant, Jerry Wayne Herndon. The judge allowed defendant to take the child Christmas shopping for the afternoon. Herndon immediately left the State of Nevada and returned to Tennessee with the child. A criminal complaint was issued charging a violation of custody rights and first degree kidnapping. Requisition to the Governor of the State of Nevada was made on the strength of the affidavit of the police officer alleging that defendant was a fugitive from that State. The requisition was dispatched to the Governor of the State of Tennessee upon which defendant's extradition to the State of Nevada was directed.

Appellant filed a petition for writ of habeas corpus alleging that he was unlawfully arrested on the requisition from the State of Nevada; that the extradition documents were irregular on their face; and that no crime had been committed in the State of Nevada because the courts of that State did not have jurisdiction of the subject matter which was the underlying basis for the charge of criminal conduct against the petitioner. Upon a hearing a trial court denied the petition, holding that the proceedings were governed by T.C.A. § 40-9-114 which provides that the guilt or innocence of the accused of the crime with which he is charged may not be inquired into by the governor, or in any proceeding, after the demand for extradition accompanied by a charge of crime in legal form .... shall have been presented to the governor, except as it may be involved in identifying the person held as the person charged with the crime. He found that the issue of jurisdiction is a matter which must be raised as a defense in the Nevada proceedings, and that even though, under the

law, Tennessee might be the proper forum to litigate custody and visitation privileges the extradition proceedings involve an alleged violation of a Nevada criminal statute and not the civil matter which is the root of petitioner's difficulties.

We are constrained to agree with the trial court. There can be no doubt that as a federal jurisdictional statute the Parental Kidnapping Prevention Act of 1980, 28 U.S.C., § 1738A, preempts the area of custody jurisdiction, and under the supremacy clause of the United States Constitution takes precedence over either Tennessee or Nevada law in the determination of jurisdiction in custody disputes. See Lodge 76, *International Association of Machinists and Aerospace Workers v. Wisconsin Employment Relations Commission*, 427 U.S. 132, 139, 96 S.Ct. 2548, 2552, 49 L.Ed.2d 396 (1976); *Leslie L.F. v. Constance F.*, 110 Misc.2d 86, 441 N.Y.S.2d 911, 913 (Fam.Ct.1981); *Mebert v. Mebert*, 111 Misc.2d 500, 444 N.Y.S.2d 834, 839, 840 (Fam.Ct.1981); *Voninski v. Voninski*, 661 S.W.2d 872, 876 (Tenn.App.1982). We have no way of knowing under what authority the Nevada court proposed to take jurisdiction of this custody matter. What is painfully clear is that while defendant's frustration in being required to expend his resources in litigating the custody of his child in the Nevada courts is understandable, there can be no question that the venue for these matters both civil and criminal is in that State. We do not know whether petitioner's entry into the civil matter there was limited to some specific purpose, or was general. Whichever it might be, the courts of this State have no jurisdiction over the Nevada courts. Until some court with appropriate authority rules that the Nevada District Court did not have jurisdiction of the custody proceedings the petitioner is subject to the rulings of that court and is presently in violation of the court's order.

Insofar as the criminal charges outstanding against him are concerned, these matters too must be litigated in the Nevada courts. If the petitioner is correct in his

assertion that he has not committed any crime that is a matter which must be raised as a defense in the Nevada proceedings. In *State ex rel Jones v. Gann*, 584 S.W.2d 235 (Tenn.Cr.App.1979) in analyzing a similar situation we said:

"... A governor's grant of extradition is prima facie evidence that the requirements fixed by the Constitution and by statutes have been met. *Michigan v. Doran*, 439 U.S. 282, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978). Once extradition is granted, judicial review of that decision by a petition for habeas corpus is limited to consideration of (1) whether the extradition documents are in order on their face; (2) whether the demanding state has charged the petitioner with a crime; (3) whether the person named in the request for extradition is the petitioner before the court; and (4) whether the petitioner is a fugitive. *Id.*, at 289, 99 S.Ct. at 535, 58 L.Ed.2d at 527. The petitioner here failed to show any facial invalidity in the extradition documents. Without that, he is not entitled to probe more deeply into the governor's decision...."

While we might be disposed to say, on the basis of the record before us, that petitioner has lawful custody of his child under Tennessee law and the Federal Parental Kidnapping Prevention Act, the criminal charges pending in the State of Nevada may not be inquired into beyond that which we have already said heretofore. T.C.A. § 40–9–114.

The judgment of the trial court must be affirmed.

DWYER and DUNCAN, JJ., concur.